DANIEL F. O'CONNOR, ADMINISTRATOR, *vs.* HARRY ZAVARITIS.

Second Judicial District, Norwich, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

In the present case the evidence tended to prove that the wife of the plaintiff while walking south with him near the east edge of a concrete roadway twenty feet or more in width—there being no sidewalk—was struck from behind by an automobile driven at high speed and without warning, was thrown sixty feet and then run over by both right-hand wheels of the car, receiving injuries from which she died within an hour; that she had just stepped off the concrete to allow a car going north to pass, and was about to step back to the concrete, when she was hit; and that at the moment of the accident the defendant's car, attempting to pass several others going south, swung clear over to the east side of the roadway, although there was room enough between the decedent and the other cars for the defendant to have passed by safely. *Held* that upon these facts, which the jury might reasonably have found, they were warranted in concluding that the decedent was free from contributory negligence although at the moment of stepping back to the concrete she did not look behind her.

The defendant moved that the jury be discharged because of a remark by plaintiff's counsel during argument to the effect that any sympathy shown by the defendant was the sympathy that affected his pocketbook, which lay pretty near his heart, and that the insurance company, which was defending, was with him in that respect. It appeared that when the jury was about to be impaneled, counsel for the plaintiff, without objection, requested that if any juror was related to either party, or was a stockholder or agent of the Travelers Insurance Company, he should make that fact known; and that the court, in the opening part of its charge, told

O'Connor *v.* Zavaritis.

the jury to dismiss the question of whether the defendant was insured or not from their minds, as it had no bearing at all on the case before them. *Held* that under these circumstances the refusal of the court to discharge the jury did not constitute reversible error.

The decedent was a young woman, mother of two children, was bodily and mentally well, and suffered physical pain before she died. *Held* that there was no known standard by the application of which this court could say that a verdict for $10,000 was excessive.

The court charged that the sounding of a horn must be given at such a distance from a pedestrian as to be an adequate warning of danger, in order to lay the foundation for a defense of contributory negligence. The defendant objected that this instruction ignored the evidence that the deceased was in a place of safety as the machine approached, but stepped into its path so suddenly that defendant was unable to give any adequate warning. *Held* that this criticism was not well founded, inasmuch as this portion of the charge was limited to the sounding of the horn, and must have been so understood; while other factors were adequately treated of in the preceding and following portions of the charge.

In what was, apparently, a statement of the plaintiff's claims, the trial court said to the jury that they should bear in mind that the pedestrians, having stepped off the concrete to the side of the road to allow the north-bound car to pass them, had the right to assume that such car as it proceeded would keep to the easterly or right side of the road to enable any car it might thereafter meet to pass them, the pedestrians, in a lawful manner; and upon such assumption, they had the right to regard themselves within the zone of safety. *Held* that if this statement was to be treated as a comment of the court upon the facts and not merely a recital of the plaintiff's claims, it was clearly supported by the uncontradicted facts as they existed at the time the decedent was on the edge of the dirt walk next to the concrete.

An appellant cannot cull out isolated portions of the charge and assign error upon them, as though they stood alone and comprised all the instructions which the jury had to guide them in the case.

Argued April 27th—decided July 20th, 1920.

ACTION to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the defendant's negligence, brought to the Superior Court in New London County and tried to the jury before *Warner, J.;* verdict for the plaintiff for $10,000, which the trial court refused to set aside as against the evi-

dence, and from this decision and from the judgment rendered on the verdict the defendant appealed. *No error.*

*Arthur M. Brown* and *Charles V. James*, with whom was *Thomas E. Troland*, for the appellant (defendant).

*Arthur T. Keefe*, for the appellee (plaintiff).

GAGER, J.   This action is brought by the administrator of his deceased wife to recover damages for her death, claimed to have been caused by the negligence of the defendant in driving a heavy, seven-passenger touring car upon Thames Street in Groton at an excessive and dangerous rate of speed, striking the deceased from the rear with such force as to throw her some sixty feet ahead, and then running over her with both right-hand wheels, causing such injuries that she died about half or three-quarters of an hour later.

The defendant offered no evidence.   The jury rendered a verdict for the plaintiff for $10,000 damages. The defendant appeals, claiming that the verdict was against the evidence and was excessive; also that the court erred in refusing to discharge the jury on account of certain remarks made in argument by plaintiff's counsel, and that there were errors in the charge.

In appealing on the ground that the verdict was against the evidence, the only point urged by the defendant is that the jury were not warranted in finding that the deceased was free from contributory negligence.   Referring briefly to the situation, it appears the jury might easily have found that Thames Street, running north and south, had a concrete roadbed twenty-six feet ten and one half inches wide.   A trolley track was located on the westerly part, and the concrete roadbed easterly of the easterly rail of the trolley

track was twenty feet two inches in width. On the west there was no walk. On the east there was no walk other than the natural soil starting about on a level with the concrete, some eight to ten feet in width, and rising slightly to the east. It was the custom of pedestrians going in either direction at this point to walk along the easterly edge of the concrete. No specific provision for pedestrians was made. The plaintiff and his wife were walking southerly on their left, which was the easterly edge of the concrete roadbed, facing cars coming on the side of the street on which they were walking. The plaintiff and his wife, having just stepped off the concrete to allow a car coming toward them to pass, were stepping back to the edge of the concrete. The plaintiff administrator and his wife were walking side by side, he upon her right, and when he had reached the edge of the concrete his wife was still upon the dirt part of the roadway. The car for which they had just stepped aside having passed, neither the plaintiff nor his wife looked back as they were stepping toward the concrete. At that moment two or three cars were passing them going southerly on the westerly side of the concrete, and the defendant, at the rear of this line of cars, going at a high rate of speed, thirty-five to sixty miles an hour, drew out to pass the cars ahead, swung clear to the left and, without warning, struck the deceased, still upon the dirt road, with such force as to throw her upward of sixty feet ahead, when, as she fell, both of his right wheels ran over her.

The jury could also have found that there was sufficient room for the defendant to have passed safely between the cars ahead of him and the deceased and her husband.

The court repeatedly and adequately called the attention of the jury to the necessity of showing due

O'Connor *v.* Zavaritis.

care on the part of the deceased, before the plaintiff could recover.

We think that the jury were, upon the facts, amply justified in finding, as they must have done, no contributory negligence on the part of the deceased, and that the statement of facts shows no situation which rendered it negligence for the deceased to be upon the dirt roadway without at that moment looking back, although she was near the edge of the concrete.

The defendant further claims that the court erred in denying defendant's motion that the jury be discharged from the trial of the case, upon the ground that during the argument by one of plaintiff's counsel he said: "The defendant's sympathy for the plaintiff is the sympathy that affects his pocketbook which lies pretty near his heart, and the insurance company which is with him in this matter"; and upon the ground that said counsel also referred to the defense of the case by an insurance company.

The finding shows that "in the statements by counsel of the nature of the case, preliminary to impaneling the jury, counsel for the plaintiff, without objection on the part of the defendant's counsel, requested that any juror if related to either party to the controversy, or a stockholder or agent in the Travelers Insurance Company, should make it known." In the opening part of his charge the court said: "I should say to you here, right at the outset, that you are not to consider at all the question of whether or not Harry Zavaritis, the defendant, was insured. It has no bearing whatever and should have none in your consideration of this case. It is only the question of whether the negligence of the defendant was the proximate cause of the injury and death of Ellen O'Connor. That is the issue. And whether, of course, the deceased herself contributed to that accident by her negligence. So dismiss the

question of whether he was insured or not absolutely from your minds, as it has no bearing whatever upon the issues you are called upon to try in this case."

We also must take notice of the practice of every prudent owner of an automobile to insure against accidents, which practice, followed by the defendant, had already been called to the attention of the jury when impaneled, and again during the trial, when it was testified that the defendant in a statement had referred to his insurance. The jury were in this statement told nothing they did not know before. The inference is, though it does not clearly appear in the finding, that the remark may have had its basis in some statement of sympathy by counsel for the defendant. The jury are deemed to be ordinarily reasonable men, and in view of the instructions, we do not think the denial of the motion was reversible error.

The defendant also claims that the verdict should be set aside on the ground that the damages assessed were excessive. The statute provides for "just damages not exceeding $10,000," whether the death is "instantaneous or otherwise." General Statutes, § 6137. In the present case the damages were assessed at $10,000. The charge upon the measure of damages in the case of death is not complained of and must be deemed adequate. The facts appearing were that the deceased was a young married woman twenty-four or twenty-five years of age, the mother of two children, one about two years old and the other four months old; that she was strong, physically well and had never been ill, and that she lived some three-quarters of an hour after she was struck, during which time she was, to some extent at least, conscious, and that physical pain and suffering must have attended the injury, and there was nothing to show she had not ordinary mental capacity. The matter of damages for death has been several times

before this court and needs no extended consideration here. Of the more recent cases we may refer to *Broughel* v. *Southern New England Telephone Co.*, 73 Conn. 614, 48 Atl. 751; *Nelson* v. *Branford L. & W. Co.*, 75 Conn. 548, 552, 54 Atl. 303; *Hesse* v. *Meriden, S. & C. Tramway Co.*, 75 Conn. 571, 54 Atl. 299; *Lane* v. *United Electric Light & Water Co.*, 90 Conn. 35, 96 Atl. 155. In the first three cases full damages, then by statute $5,000, were allowed and upheld by this court, and in the *Lane* case quite small damages were assessed by the jury and supported by this court. In the latter case the court said with reference to the assessment of damages for death: "Such problems are peculiarly appropriate for a jury's deliberation in which twelve individual judgments are set to the task of estimation, and the verdict is a composite of the views of the twelve. The fairness of the resultant award cannot well be subjected to any recognized test, or measured by any certain standard. . . . Where the matter is submitted to a jury of twelve men to exercise their combined judgment, wide latitude must be accorded to them, and their verdict should not be disturbed for difference in judgment, even if considerable." We might add to this a citation from the *Hesse* case, above mentioned, which is even more applicable to the present case than it was to the case in which the observation was made. In that case *Judge Thayer* tried the case as a court and rendered judgment for full damages, and one of the reasons of appeal was that the judgment rendering full damages under the statute as it then existed was excessive. TORRANCE, then CHIEF JUSTICE, said: "We agree with the defendant, that in cases of this kind there should be more evidence as to the quantum of damages than the mere fact that the injured party died, and at such an age. Such evidence, standing alone, would rarely, perhaps,

warrant a court in awarding the full statutory amount of damages. But the court below had before it, bearing on the quantum of damages, something more than the mere fact of the age and death of Meyer. There was evidence tending to show that Meyer was a man of average size, and in good condition physically and mentally; and there was evidence tending to show that he lived for some minutes after the accident, and that he suffered some pain. This being so, we cannot say that the court erred in awarding the full statutory amount of damages."

We think the citations from these cases are peculiarly applicable to the case here, and we know of no standard by the application of which we should feel justified in saying that the verdict was excessive.

The defendant has also predicated error upon certain portions of the charge to the jury. The court charged, with reference to the sounding of his horn by the defendant, as follows: "The law, as you see, gentlemen, contemplates that the sounding of the horn must be given at such a distance as to be an adequate warning of danger. If the warning were given when the car is practically upon the victim of the collision, there would be no warning, as the object of the warning is to permit the person who is in danger to turn to the right as soon as practicable, to enable the overtaking car to pass him or her. So that if the approaching car were so close to them that even the plaintiff's intestate heard the warning, though the plaintiff did not, and she had no time to stop and think, she would not be barred from recovery of damages, provided the injury received was due to the fact that the defendant did not have his car under proper control, and did not sufficiently reduce or slacken its speed, or stop altogether, if you find that the exercise of reasonable care on his part required it. I think I ought to say to you, gentlemen,

O'Connor *v.* Zavaritis.

though it may seem repetitious, that the deceased, independent of the fact that she was on the left-hand side of the highway, if there was no adequate warning to enable her to escape the oncoming car, so that if in the emergency she could not even turn to the right, as the law required her to do, which would carry her into the center of the concrete road, or jumped still further to the left, it would not bar recovery if the defendant did not exercise that due and reasonable care that a reasonably prudent man should exercise, namely, to have his car under control, so he could slacken or stop it, if necessary to avoid a collision."

The defendant complains of this charge because it "disregarded the evidence that she was in a place of safety as the machine was approaching and that she stepped into its path when it must have been within a few feet of the point of collision, and that by reason of that act the defendant was unable to give adequate warning of his approach. They might also have conveyed to the jury the impression that failure on the part of the defendant to sound his horn rendered him liable and that the whole burden of care was upon him, even though the decedent failed to exercise due care and was herself guilty of negligence in failing to look as well as listen." The criticism here made is not well founded. This portion of the charge is limited to the sounding of the horn alone, and must have been so understood. It was preceded by an extended and fair review of the situation and of the statutory provision as to sounding the horn, and was followed by a further review of the plaintiff's claims as to the defendant's speed in the situation, and could not properly have been understood as withdrawing all other considerations from the attention of the jury. So far as the point intended to be covered is concerned, the statement of the law was quite correct, and the jury were

in possession of the indisputable facts that the defendant was coming up from behind the deceased, turning out at a high rate of speed to pass other cars going in his direction; that the deceased was upon the dirt walk and not upon the concrete roadway, and that she was facing toward the direction from which, under the rules of the road, cars would be coming on the side upon which she was walking, and that she was upon the side of the highway where, from the construction of the road, pedestrians of necessity usually walked.

Another claim of error is based on this part of the charge: "And the plaintiff further claims that he has shown by the same fair preponderance of the evidence that his intestate, Ellen O'Connor, was free from any contributory negligence; true, they say she was at the time on the easterly side of this highway; that she had a right to be there; that that was really the zone of safety for all pedestrians going up or down that highway, because on the other side of the highway was the trolley-track, and that was utilized by the automobiles; that she was at the time of being struck on the left side of her husband, who was himself on the edge of the concrete pavement. . . . . Bear in mind at that point that the trolley-track is something higher; that both having stepped off from the concrete on to the dirt to allow the car coming to the north to pass them, they had the right to assume that this car which they met would, under the law, keep to the right or easterly side of the highway after passing them, to enable any other car that might meet in their rear to pass them in a lawful manner. With that fact, they then had the right to assume they were within the zone of safety."

The defendant particularly complains of that portion of the charge which refers to the right of assumption upon the part of the deceased, that the car passing them going north would continue to its right

after it had passed them, and the statement, "With that fact, they then had the right to assume they were within the zone of safety." From the context this appears to be a statement of a claim of the plaintiff, quite reasonable upon the facts shown, but not intended otherwise than as a statement of the plaintiff's claim. But if it is considered as a comment of the court upon the facts, it was clearly supported by the uncontradicted facts in the case as they existed at the time she was on the edge of the dirt walk next the concrete. The real question was whether or not when the deceased, stepping back toward the concrete but not off the dirt walk, would be guilty of negligence in then assuming that she was doing a reasonably safe thing; that is, that she was in a reasonably safe place. It does not appear whether the defendant had then begun to turn out. Several cars were coming down on the west side of the concrete; the car for which she turned out had passed to the north. No car was coming toward her. There was room for any car swinging out of the line of south-bound cars to pass between her and the other south-bound cars. She was not chargeable with the assumption that the defendant would attempt to turn out of the line of cars going in his direction and pass the cars ahead of him at so high a rate of speed as not to be able to control his car upon discovering some one walking near the concrete but upon the dirt roadway in front of him. If the deceased had the right to be on the highway, as she had equally with the defendant, she did nothing to create danger from anything she could observe, or from any one using the roadway with reasonable care, and under such circumstances there was nothing misleading in the reference to the situation where she then was at that time as the zone of safety.

Certain other portions of the charge are complained

of as stating claims of the plaintiff without adverting to other relevant facts which might modify or affect all these claims. The defendant here makes the not unusual error of culling isolated portions of the charge from the context, and then claiming error as though they stood alone and were all that the jury had to guide them. In the present case, the court, in the course of its charge, very fully directed the attention of the jury to all the relevant facts and the rules of law applicable. Proximate cause, contributory negligence, the equality of rights in the use of the highway, the statutory rules of the road and their application, and especially those relating to passing when both parties are traveling in the same direction, were all clearly and fairly put before the jury, and the defendant has no cause of complaint.

There is no error.

In this opinion the other judges concurred.