**Florence E. Kirman, Administratrix of the Estate of George T. Kirman, Deceased, Appellee, v. R. M. Hutchinson, Appellant.**

**Gen. No. 7,972.**

Opinion filed August 12, 1929. Rehearing denied October 16, 1929.

Barr & Barr, for appellant.

Snapp, Heise & Snapp, for appellee; Paul Pruts-man, of counsel.

Mr. Justice Jett delivered the opinion of the court.

Florence E. Kirman, administratrix of the estate of George T. Kirman, deceased, appellee, instituted this suit in the circuit court of Will county against R. M. Hutchinson, appellant, to recover damages for the death of George T. Kirman, deceased, occasioned by the negligent handling and driving of an automobile of the appellant, by Mary J. Hutchinson, his wife.

A jury trial was had with a finding in favor of appellee in the sum of $10,000; motion for new trial was made, argued, denied and judgment rendered on the verdict of the jury for the sum of $10,000 and costs of suit. To have the record reviewed, appellant prosecutes this appeal. For the purpose of this opinion appellee will be referred to as plaintiff and appellant, as defendant.

The original declaration, together with the additional counts filed on which the issues were submitted, consists of four counts, each of which averred, as the basis of the liability of the defendant, that he, on November 19, 1927, was the owner, possessed of, and

riding in a motor vehicle, kept, maintained and used by him for family use, comfort, convenience and pleasure, and on said day said motor vehicle was in charge of, and under the care and management, and was being driven and operated by Mary J. Hutchinson, wife of the defendant, for business, comfort, pleasure and convenience of said wife and the defendant, with the knowledge, consent and permission of said defendant.

Each count also avers that the automobile of the defendant was driven by Mrs. Hutchinson as his agent and representative, along a public highway, designated as Route 4, in Du Page township, Will county, Illinois, and that by reason of the negligence of said wife, the automobile struck and collided with the deceased, George T. Kirman, who was rightfully and lawfully, and with reasonable care and caution for his own safety, standing on said highway about 5 feet east of the easterly edge of the pavement, and as a result he was injured and died.

The first count of the declaration is a general negligence count. The second charges the driving of an automobile at an excessive rate of speed. The second and third, being additional counts, charge negligence with reference to the lights on the car of the defendant. To the declaration the defendant pleaded the general issue, together with a special plea, denying ownership and operation of the car. During the trial the special plea was withdrawn. A trial was had with the result as hereinbefore indicated.

R. M. Hutchinson, Mary J. Hutchinson, his wife, his daughter and a doctor friend, by the name of George C. Turnbull, were driving from Chicago on said Route 4, intending to go to Neponset, Illinois, to see the father of Dr. Hutchinson, the defendant, and an aunt of Dr. Turnbull's, both of whom were ill. They left Chicago on Saturday, November 19, 1927, at about three o'clock p. m., and arrived at the point where the

collision took place that resulted in the death of plaintiff's intestate, between the hour of five and five-thirty. The deceased was a farmer, owned and resided on his farm, some ten miles from Joliet. The farm extended some distance along both sides of the road known as Route 4. Kirman kept his cows across the road in a pasture, to which he would drive them in the morning, and bring them back to the barn in the evening.

On the day in question plaintiff's intestate and two of his children went after the cows and drove them to the gate, which leads to and opens out upon said highway; he looked both ways and no car was in sight; he opened the gate, which was 16 feet wide, and when he opened it he was off of the concrete slab some five or six feet; the cows had been driven through the, gate and across the slab on to the shoulder of the opposite side, with the exception of one cow, which had not yet cleared the pavement, when the automobile of the defendant was approaching. The road is practically level for a long distance in both directions, from where plaintiff's intestate was struck by the automobile. The evidence shows that there is an almost imperceptible grade downward to the south; one thousand feet north from the gate is a small elevation; this elevation is high enough to obstruct the view of the driver of a motor car going south, until the car approaches the crest about 1,350 feet north of the gate, after which the view from the hill and down the road to and past the place of the collision is wholly unobstructed. There appears to be no conflict in the proof concerning the place of the collision and the surroundings. It had been snowing that afternoon and was more or less cloudy. The automobile had no lights except the dimmers, which threw a light 50 feet ahead, and a spot light, set to illuminate the west edge of the pavement, for about 25 feet ahead; meeting many cars, the car was driven with the dimmers on to avoid the incon-

venience of turning the bright lights on and off. It was getting dark, witnesses vary as to how dark it was; the pavement was slippery; the view, except as to the advancing twilight, was wholly unobstructed for at least 1,350 feet.

Kirman was standing 5 to 6 feet off the slab, as the car approached from the north. On the west side of the road, 110 feet north from where the deceased was standing, was a mail box; as the car passed the mail box, it lurched towards the east and ran across on the opposite side of the concrete, from which it continued out on to the shoulder towards Kirman. Just before striking the deceased the car was turned back towards the road; as it ran back on to the pavement, the wheels skidded toward the southeast in the dirt and gravel covering a culvert, and past the end of the culvert along the side of the ditch, as the direction of the car changed. In the effort to avoid the ditch on the east side of the road, the car was driven southwest and ran back on to the concrete, across to the other side, and off again on to the shoulder west of the slab. When the car ran over on to the culvert from 5 to 6 feet east of the slab and swung back on to the road, the rear end struck Kirman a glancing blow, and knocked him 40 feet south. He was picked up on the outer bank of the ditch and lived but a few hours after the accident. From the point where the car began to skid to the place where it finally ran into the fence and stopped is estimated to be around 175 feet. Plaintiff insists the car was moving south immediately before and at the time of the collision, at a high rate of speed.

A number of reasons are assigned for a reversal of the judgment. It is insisted that the evidence fails to show negligence on the part of the defendant, and due care on the part of plaintiff's intestate. It is the position of the defendant that, assuming all the facts to be as contended by the plaintiff, they do not show that

the defendant was guilty of negligence, but on the contrary show that the deceased was guilty of contributory negligence, or at the most the occurrence was merely an accident, occurring without the negligence of any one.

Our attention has not been called to the testimony relied upon by the defendant, except in a general way, to sustain his contention that the evidence fails to show negligence on the part of the defendant and want of due care on the part of plaintiff's intestate. The burden is upon the party who assigns the error to make the same appear affirmatively, the presumption being in favor of the finding and judgment. *Kieshkowski v. Bostrom,* 179 Ill. App. 73–75; *Chicago & A. R. Co. v. American Strawboard Co.,* 190 Ill. 268–275; *Crane Co. v. Hogan,* 228 Ill. 338–340.

The deceased had a right to use the road in question; there was nothing unusual in his going to the pasture with his children to get the cattle and return them to the barn; he did the natural thing for the protection, evidently of himself and his stock, that is before the cattle were permitted to go through the gate, and across the slab, he looked both ways. We are not prepared to say, from anything that is shown by the evidence, that the plaintiff's intestate was guilty of contributory negligence.

The car was equipped with bright lights and dimmers. In the half hour preceding the accident, the bright lights were not turned on; the defendant among other things, testified: "I do not know how long a time we drove with the dimmers on only. I should judge we drove with the dimmers on for the last half hour; I don't think the bright lights were turned on at all; the bright lights threw a light down the road farther than the dimmers. I could not tell you how far down the road on the night in question, I could see with the bright lights on; the lights did not throw

light very far that night anyway it seemed; the reflectors were all right; the lamps were not dull; I don't know how much better I could have seen with the bright lights on than I could with the dimmers, I believe you could see at least 1500 feet with the bright lights on."

The car in question was a new Buick Six, and equipped with four-wheeled brakes. It had been driven about 3,500 miles. It had new tires. The defendant insists the car was being driven at a rate of speed not to exceed 25 to 30 miles an hour. The jury had the right to consider all the facts and circumstances in connection with the collision.

The declaration charges insufficient lights, excessive speed and negligent driving. The car was evidently traveling at a rate of speed in excess of 25 or 30 miles per hour, or else it would not have forced the body the distance of 40 feet, and could have been stopped in a short distance, being equipped with four brakes. It was, among other things, for the jury to say whether or not the car was under the control of the driver when approaching the place of the collision, and whether or not it was being driven at a greater rate of speed than was reasonable and proper, having regard to the traffic and the use of the way. The facts peculiarly present a case proper for a jury to pass on. It was, therefore, a question of fact for the jury to determine whether or not the defendant was guilty of negligence, and whether the deceased was in the exercise of due care and caution.

It is next insisted that the court erred in holding that Mrs. Hutchinson, who was operating the automobile, was an incompetent witness. The claim that she is incompetent is based entirely on the clause found in section 5, chapter 51, Revised Statutes, Cahill's St. ch. 51, ¶ 5, reading as follows: "No husband or wife shall, by virtue of section one of this Act, be rendered

competent to testify for or against each other as to any transaction . . . occurring during marriage . . . except . . . business transactions where the transaction was had and conducted by such married woman as the agent of her husband.'' The above exception is in derogation of the common law, and it must be strictly construed; the language is plain, the words unambiguous. The statute means and says the wife cannot testify for the husband as to transactions occurring during marriage.

*Walbank v. Shaw Livery Co.*, 186 Ill. App. 128, is a case very similar to the one under consideration. There the wife was driving her husband's car alone, when it was injured by a collision with defendant's car. Objection was made to the wife testifying, which the Appellate Court held to be insufficient; the wife was allowed to testify to the facts of the accident, and the judgment for plaintiff was affirmed. The Appellate Court, however, held she was not a competent witness for her husband, saying: ''We think that where a wife has the custody and control of an automobile of her husband, which is struck by another automobile, and no witness of the occurrence knew the wife by sight, or knew who was the owner of the automobile which was so struck, the wife, from the necessity of the case, under the rule of the common law stated in the cases cited, is a competent witness to testify that she was driving the automobile which was struck. As the witness was competent to testify to certain facts, the objection by defendant that she was 'absolutely incompetent' was properly overruled.

''The wife was not a competent witness for her husband under the provisions of the statute that she may testify for or against her husband 'in all matters of business transactions where the transaction was had and conducted by her as the agent of her husband.' Her testimony did not relate to any business transac-

tion had or conducted by her as the agent of her husband. If it be conceded that she went in the automobile to attend to a business transaction for him, this 'did not make her a competent witness to testify to what she saw or heard on the way to or from the place where such transaction was had, but only made her competent to testify to such transaction.''

The reasoning in the above cause in the construction of the statute seems to be beyond criticism. Here the ''business transaction'' claimed was a professional call by the defendant and Dr. Turnbull; the other party to that business transaction was necessarily some patient with whom the two doctors had business; they certainly had no business with the deceased.

*Bolkhardt v. Edwards*, 230 Ill. App. 640, was a case brought against Edwards by Bolkhardt to recover damages to his automobile, driven by the wife of Bolkhardt. The court in its opinion, among other things, at page 641 said: ''The only witness who testified to the circumstances of the collision, on behalf of the plaintiff, was the plaintiff's wife. At the time of the accident she was driving the plaintiff's car and her twelve-year-old daughter was with her. The defendant contends that the testimony of the plaintiff's wife was erroneously admitted, so far as it related to the circumstances of the accident, and by reason of such error this court is asked to reverse the judgment.

''Section 1 of our statute on Evidence (Cahill's Ill. St. ch. 51, ¶ 1) removes the common-law disability of parties and persons interested in the event of the suit as witnesses. Section 5 of the same Act (Cahill's Ill. St. ch. 51, ¶ 5) deprives husband and wife of all benefit of section 1, except in certain specific cases. It seems clear that Mrs. Bolkhardt did not come within any of the exceptions mentioned in the latter section, and, therefore, her testimony, which was objected to on the trial of the case, was incompetent, unless it would have

been admissible at common law. In *Parmelee v. Mc-Nulty*, 19 Ill. 556; *Davis v. Michigan Southern & N. I. Ry. Co.*, 22 Ill. 278; *Illinois Cent. R. Co. v. Taylor*, 24 Ill. 323, and *Illinois Cent. R. Co. v. Copeland*, 24 Ill. 332, it was held that a party in interest and also the wife of such a party might be permitted to testify as to the contents of lost baggage. The court recognized this as an exception to the general rule that a party in interest was disqualified as a witness by such interest, but placed the exception on 'the necessity of the case.'

"We are disposed to give the rules of evidence as liberal a construction as the law permits. Applying that general rule to the situation presented in the case at bar, we would be inclined to hold that by reason of 'the necessity of the case,' the wife might be permitted to testify for the plaintiff, her husband, in an action brought by him to recover damages to his automobile, which damages he alleged were caused by the defendant, in a collision with the plaintiff's car, when the latter was being driven by his wife, she being alone at the time, and there being no other witnesses to the accident—and this, not on the theory that such an occurrence is covered by any situation set forth in section 5 of the Evidence Act, but rather on the theory that such evidence would be admissible at common law. In changing the common-law rules of evidence, by the passage of our statute, it was sought not to restrict the common-law rules but to liberalize them. However, in the case at bar the necessity above referred to is not established. It appears from the evidence that the plaintiff's young daughter was with her mother at the time of the occurrence in question, and also that a policeman was either present and witnessed the accident or came up immediately after it.

"Under the circumstances we are of the opinion that the rules of evidence, even giving them the liberal construction we are disposed to, are such as to make the

objections which the defendant interposed to the questions put to the plaintiff's wife, relating to the circumstances of the collision, good, and they should therefore have been sustained.''

The Arkansas statute is practically identical with ours on this· question. In *Taylor v. McClintock,* 87 Ark. 243, 112 S. W. 405–417, the court said: ''Kirby's Dig. 3095,'' authorizing a husband or wife to testify for the other respecting any ''business transacted, by the one for the other, in the capacity of agent,'' did not authorize the husband of a will contestant to testify concerning a copy of a letter written by contestant to testator; the term ''business transacted,'' referring to business transactions with third persons and not with each other, and the statute being designed to enable a husband or wife who had transacted business with a third person'' through the other as agent, to prove such business by the agent who transacted it, the principal not having personal knowledge thereof.''

In *Fishback v. Harrison,* 137 Mo. App. 664, 119 S. W. 465, it is held: ''That the transactions referred to were those had between the wife acting as her husband's agent and some other person, and did not include a case where the husband consummated an agreement himself, and only called on his wife to sign his name to a note because of his illiteracy.'' The Missouri statute authorizes a married woman to testify for her husband in actions against him concerning any business transactions directed or conducted by her as her husband's agent.

Furthermore, there are numerous cases in our courts indicating that ''business transactions'' means transactions growing out of a transaction conducted at least in part by the wife, and that her evidence must be concerning that contract in litigation with the other party to the contract.

In *Donk Bros. Coal & Coke Co. v. Stroetter,* 229 Ill. 134, at page 137, the court said: ''The court permitted

appellee's wife to testify, over appellant's objection, to a conversation with Mr. Donk tending to show a promise to pay the appellee $5 per acre for securing these options. The statute makes the wife competent to testify for or against her husband 'in all matters of business transactions where the transaction was had and conducted by such married woman, as the agent of her husband.' But in this case no transaction was had and conducted by Mrs. Stroetter. She testified that her husband sent her to Mr. Donk's office, and she had this conversation with Mr. Donk as the agent of her husband, but she conducted no business. To make a wife a competent witness under this clause, it should appear that she was authorized by her husband to conduct some business transaction for him, which she did conduct, and then she may testify. It was error to overrule the defendant's objection to her testimony.''

In *Hayes v. Parmalee,* 79 Ill. 563–564, which was a suit to recover damages for levying upon and taking away goods of plaintiff under a writ of attachment. The wife of the plaintiff was permitted to testify for him, but the Supreme Court held she was not competent to testify for him, saying: ''It was error in the court to permit plaintiff's wife to become a witness on his behalf. She was not a competent witness, under the exceptions to the 5th section of the act of 1867, nor under the act of 1874, adding to the exceptions of the former act. The latter act provides that, 'in all matters of business transactions, where the transaction was had and conducted by such married woman as the agent of her husband, in all such cases the husband and wife may testify for or against each other.'

''In this case the wife was in no sense the agent of her husband in the transaction out of which the action arose. She had no interest in the property taken, and had no care of it other than that a wife may have of any property that belongs to her husband, when the alleged trespasses were committed.''

We are of the opinion that the wife of the defendant was not engaged in any business for him, at the time in question, which would permit her to testify in this case, and without the citation of any further authorities, we are clearly of the opinion that the court did not err in refusing to permit the wife of the defendant to testify.

It is urged by the defendant that a reversible error was occasioned by the conduct and by certain remarks made by counsel for plaintiff, during the progress of the trial. We have examined the abstract, and it appears that when objections were made to the remarks of which defendant complained, the court, in the main, sustained the objections and struck the remarks from the record.

In *City of Chicago v. Chicago Title & Trust Co.*, 331 Ill. 322–327, at page 327 the court said: "It rests in the sound discretion of the trial judge to say, under all the circumstances of the case, whether a new trial should be granted on the ground of prejudicial arguments of counsel, and unless it satisfactorily appears from the record that the trial court has abused its discretion in this regard, this court will not interfere." After an examination of the record we do not think the trial judge abused the discretion in the regard complained of by the defendant.

The defendant insists the acts of the jurors in pursuing independent investigations were erroneous. It appears from the evidence in support of the motion for new trial, that two of the jurors in the course of the trial,—one making a special trip for the purpose, and the other driving by,—got out and looked casually at the road, at the scene of the accident, and two others, while driving by, looked over the scene of the accident. We have read the evidence heard by the court, and the affidavits filed, bearing upon the conduct of the jurors. While we think the conduct of the

jurors was not proper, and such a practice should not be encouraged, we are unable to say from what appears of record and the showing made, in support of the contention of the defendant, that the court erred in denying the motion for a new trial.

It is said by the defendant that the court erred in its ruling on the instructions. We have examined the instructions in connection with the argument with reference to this assignment of error, and are of the opinion that the assignment is not well founded. In fact there is little attention given this assignment or error in the brief and argument filed by the defendant in this court. The jury was fully instructed on behalf of the defendant. Most of the instructions refused stated proper and correct principles of law, but were covered by the instructions given. We are of the opinion that the instructions given on behalf of appellee are practically correct. There was no reversible error in the giving or refusing of instructions.

We conclude, therefore, that the judgment of the circuit court of Will county should be affirmed, which is accordingly done.

*Judgment affirmed.*