Lenora Alden, Appellee, v. Clarence Coultrip, Appellant.

Gen. No. 8,724.

Opinion filed May 10, 1934. Rehearing denied June 25, 1934.

BUTTERS & BUTTERS, for appellant.

ROBERT J. WING, ARTHUR L. PUKLIN and ANDREW J. O'CONOR, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The plaintiff secured a verdict for $5,000 for personal injuries resulting from the automobile of the defendant being driven against her on the evening of November 8, 1930, while she was on a State highway. The declaration charges that the automobile at the time was being driven by Marvin Coultrip, a son of the defendant, as the agent of the defendant. The first count contains a general charge that there was negligent and careless driving, managing, controlling and operating the automobile; the second count alleges that the automobile was driven at a high and dangerous rate of speed, to wit, 45 miles per hour without regard to the traffic; the third count sets out section 22 of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 23, which provides that the driving of an automobile at a greater rate of speed than 45 miles per hour outside the limits of an incorporated city, town or village, shall be prima facie evidence, that the person operating the automobile is running at a rate of speed greater than is

reasonable and proper, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person. The count avers that the automobile was driven outside the limits of an incorporated city, town or village and at a rate of speed which was negligent and not reasonable and proper, having regard to the traffic and the use of the way and so as to endanger the life or limb or injure the property of any person. The fourth count alleges that the automobile without warning was suddenly turned and driven against the plaintiff; the fifth count alleges that the driver of the automobile failed to keep a lookout to ascertain the presence of the plaintiff on the highway.

The defendant pleaded the general issue and two special pleas. The first special plea averred that Marvin Coultrip was not the agent or servant of the defendant at the time of the accident; the second special plea averred that Marvin Coultrip was driving the car, at the time in question, for his own purpose, and not upon, about or in the transaction of any business or affairs of the defendant. The plaintiff filed a *similiter* to the plea of the general issue and replications to the special pleas. Trial was had and the case submitted to a jury.

At the close of the plaintiff's evidence and at the close of all the evidence, the defendant made motions for a directed verdict which were overruled. The jury found for the plaintiff and assessed damages at $5,000. Motions by the defendant for a new trial and in arrest of the judgment were overruled and judgment was rendered on the verdict.

On the trial the case was defended along the lines that the driver of the car was not guilty of negligence, but if so, that the plaintiff was guilty of contributory negligence; denial that Marvin Coultrip was the agent of the defendant, but if his agent, no proof that at the

time in question he was acting within the scope of his agency. These were material issues of fact which the plaintiff was required to prove by a preponderance of the evidence to entitle her to a verdict. The verdict of the jury declares that the plaintiff fulfilled the burden of thus maintaining her case.

The defendant asks this court to reverse the judgment and not to remand the case to the trial court for another trial. This we have no power to do if the evidence, on the material issues of the case, is in conflict and the plaintiff's evidence fairly tends to establish her cause of action. *Mirich v. Forschner Contracting Co.,* 312 Ill. 343; *Damato v. Consumers' Co.,* 327 Ill. 249. It is not the law and we do not understand that the appellant contends otherwise, that a pedestrian on a public highway in a place thereon where he has a lawful right to be, is, as a matter of law, guilty of contributory negligence, if injured because of the actionable negligence of another, solely because of the pedestrian's presence on the highway.

The reasons urged by the defendant for a reversal of the judgment are: (1) That there is absolutely no evidence in the record which tends to show any negligence on the part of the defendant or on the part of the driver, which could be said to be the proximate cause of the injury to the plaintiff. (2) That all the evidence shows that the plaintiff was guilty of gross want of ordinary care, and that her want of ordinary care was the proximate cause of her injuries. (3) That there is no evidence which justified the court or jury in finding that the driver of the car was the agent of, or acting for and on behalf of the defendant, in driving the car on the evening of November 8, at the time of the accident. The question of law now presented to this court is whether there is or is not evidence legitimately tending to prove the material issues in the case. *Williams v. Consumers Co.,* 352 Ill. 51. This

court has not power to weigh and determine conflicting
evidence and reverse the judgment without remanding
the case, thereby depriving the plaintiff of her right
of trial by jury. *Mirich v. Forschner Contracting Co.,
supra; Kee & Chapell Dairy Co. v. Pennsylvania Co.,*
291 Ill. 248.

We must examine the record to determine if there
is evidence of the plaintiff fairly tending to support
her cause of action. At the time of the accident the
plaintiff was 58 years of age. She lived in Yorkville
where she was operating a small laundry. Evelyn
Alden, an adopted daughter of the plaintiff, lived with
her. On the evening of November 8, 1930, a bright
moonlight night, although the moon was at times ob-
scured by passing clouds, the plaintiff, Evelyn Alden
and a Mrs. Evans walked together from Yorkville
northward to State Highway No. 18. This highway is
paved with concrete in the middle thereof to a width
of 18 feet. On the concrete there is the usual black
mark placed in the middle of the pavement on State
highways and running the length thereof. According
to the evidence, black streaks on the concrete, caused
by oil dropping from cars having been driven on the
pavement, run parallel to the black mark on both sides
thereof about midway between the black mark and the
outer edges of the pavement. The highway at the
place in question runs east and west and these three
women were walking on the north side of the highway
toward the east; whether the plaintiff and Mrs. Evans
were walking on the pavement or on the shoulder there-
of is a matter of dispute between the parties. Mrs.
Evans was killed in the accident which resulted in the
injuries to the plaintiff. The plaintiff sustained in-
juries to her head, and she was unable at the trial to
recall the manner and circumstances of the accident.
Evelyn Alden was about 19 years old at the time and
it is her testimony which is relied on by the plaintiff as

tending to sustain the plaintiff's claim that there is proof that she was in the exercise of ordinary care for her own safety at the time and just prior to the accident.

Evelyn Alden testified that the plaintiff, Mrs. Evans and she, herself, were walking arm in arm on the north side of the highway about eight p. m.; that she was on the shoulder of the pavement, as also was the plaintiff, and that Mrs. Evans was near or on the outer edge of the pavement. When they were about one-fourth of a mile west of the intersection of State Highways 18 and 47, which place is known as the "Yorkville Y," she first noticed the lights of a west-bound car approaching her from the "Y." At about the same time she noticed the reflection of lights on the concrete from cars approaching her from the west, or toward her from the rear; that she and the other two women looked backward and they saw two or more cars coming from the west, one of which (conceded to be the car of the defendant) swerved to the north and struck her. She did not know what happened to her mother. It is not disputed that the car of the defendant then also struck the plaintiff and that her injuries are the result of the car striking her. This witness also testified that no horn was sounded before the plaintiff was hit by the car. She testified that she had not looked back before she saw the reflection. She looked back then and momentarily thereafter she was hit by the defendant's car. Also, that the women were not walking arm in arm at the time they were struck by the car. Plaintiff lived about one block east of the "Yorkville Y." These three women had taken a walk through Yorkville and they were walking in the direction of the plaintiff's home when the accident happened.

It appears from the evidence that before the accident there were three automobiles being driven eastward on the south side of the pavement. The first car

in line was a Ford automobile being driven at the time at about the rate of 25 miles an hour immediately before the accident, two of these cars had passed the plaintiff, and the third car was even with or had just passed the plaintiff. One Odes Oddson, driving a Chevrolet coach about 35 miles an hour, toward the east, had overtaken the last car thus in line. He was accompanied by Mrs. Florence Hauffman who at that time was Miss Florence Binder. Marvin Coultrip, driving the defendant's car on an average of about 40 miles an hour toward the east, had overtaken the Oddson car. Marvin was 21 years old and beside him on the front seat, on the right-hand side, sat Harvey Mall, 21 years old. The back seat was occupied by Leslie Mall, who sat behind the driver of the car, and by Harold Coultrip who sat behind Harvey Mall; these two last-named boys were about 19 years of age. The two cars now in line behind the three other cars followed in line on the south side of the pavement for a distance of about 60 feet.

At this juncture, Oddson switched the lights on his car on bright, turned the car to his left and accelerated the speed of the car to about 40 to 45 miles an hour, all done by him in an attempt to pass the cars preceding him on the south side of the pavement. Almost immediately after turning toward the north, and having passed one car and being about opposite the second car in line, Oddson saw the women in the highway about 15 to 20 feet in front of his car. Oddson applied the brakes to his car for a moment and then expeditiously guided his car back into the east-bound traffic lane betwen the first and second cars in line therein.

Marvin Coultrip, driving the defendant's car about two or three rods behind Oddson's car while the cars were being driven straight forward toward the east, directed the defendant's car toward the north in an attempt to follow the Oddson car. The lights on the

defendant's car were turned on bright and illuminated the highway to its full width in front of the car for a distance of about 200 feet. Marvin had seen two cars in line in front of the Oddson car before he made the turn toward the north. The application of the brakes to the Oddson car retarded its speed, and Marvin testified that he suddenly applied the brakes to the defendant's car when it was about 15 to 16 feet behind the Oddson car. As the Oddson car swung back into line on the south side of the pavement, Marvin then saw the three women on the highway for the first time and they were about 15 to 16 feet in front of defendant's car. Marvin testified that he swerved defendant's car somewhat to the south after applying the brakes and the car struck the three women. Marvin testified that he could not turn the car back into the line of travel on the south side of the pavement because of the presence of one of the cars in line there going toward the east; that he applied the brakes so suddenly and firmly that the tire on the right front wheel turned under the rim on the wheel; that owing to the sudden application and the car's being turned, the car skidded and then struck the women; that he stopped the car on the south side of the highway about 20 feet east of the place where the women were struck. On cross-examination he testified that if he had gone straight ahead and not turned slightly to the north while he was attempting to avoid hitting the Oddson car, he probably would not have struck the women. After the collision it was discovered that the front left headlight of the Coultrip car was broken, the left front and left rear fenders were bent and there was a flaw about twice the size of a man's palm in the "shatterproof" glass of the windshield, in the lower left-hand corner. Mrs. Evans was thrown over the hood of the car and the plaintiff argues that the impact of her body broke the windshield of the car. As a result of

the collision the plaintiff and Evelyn Alden were thrown into the ditch on the north side of the highway. There was sufficient space between the north side of the pavement and the ditch for the three women to walk abreast on the ground and off the pavement.

There is no evidence of any physical facts which contradicts the testimony of Evelyn Alden. It is true, as will hereafter appear, that her testimony relating to the position of the women on the highway is contradicted by the evidence of several witnesses. There is a conflict of the evidence whether a car was driven toward the west and which passed the women in the highway shortly before the accident. There is no evidence tending to prove that Marvin Coultrip drove the defendant's car off the north side of the pavement. There is no evidence tending to prove that the car of the defendant at the time and just prior to the accident was being driven at a greater rate of speed than 45 miles an hour.

Florence Hauffman and Odes Oddson, called as witnesses by the plaintiff, testified positively that the three women were walking abreast toward the east on the north side of the pavement; one of them was on the shoulder of the pavement, two were walking on the pavement, the one furthest south being on or near the streak of oil extending midway between the black mark on the concrete and the outer edge of the pavement. The testimony of Harvey Mall, Leslie Mall, Harold Coultrip and Marvin Coultrip is to the same effect. Marvin Coultrip testified that just before turning defendant's car toward the north to follow the car of Oddson, he sounded the horn on the car. In this respect he is corroborated by Leslie Mall and Harold Coultrip, the other boy in the car at the time not remembering if the horn was sounded or not.

Counsel for the plaintiff contend that the testimony of Evelyn Alden tends to prove that the plaintiff was

walking on the shoulder of the pavement when she was struck by the automobile. In fact, they attempted to convince this court that the evidence of Evelyn Alden is entitled to greater weight or credence than the testimony of Mrs. Hauffman and Oddson and the four boys who were riding in the defendant's car. However, we are not called upon to weigh the evidence nor determine the credibility of the witnesses.

Whether it be assumed that the plaintiff was on the pavement or on the shoulder thereof, she was in a place where she had a lawful right to be. She was bound to use such care as persons of common prudence generally exercise under similar or like circumstances. Whether there is any evidence in the record fairly tending to prove that the plaintiff exercised such care, under the conditions which the evidence shows existed at the time and just prior to the time of the accident, is now a question of law. The plaintiff is entitled to full credence being given to the testimony in her favor and it must be considered in the light most favorable to her together with all legitimate inferences which may be reasonably drawn therefrom. *Pienta v. Chicago City Ry. Co.,* 284 Ill. 246.

It must be conceded that the plaintiff was required to exercise some care to avoid injury to herself from the traffic on the highway and that this must affirmatively appear from the evidence. However, we know of no standard or rule of conduct prescribed by law which required certain conduct on her part to avoid injury to herself from vehicles approaching her from the rear while she was walking on the highway. Evelyn Alden testified that the plaintiff looked around just before plaintiff was struck by the defendant's car and that no horn was sounded before the collision. In fact, if the horn on the defendant's car was sounded, as testified to by Marvin Coultrip, the jury was justified in finding that it was sounded too late, under the

then existing circumstances, to give the plaintiff timely warning of the approach of the defendant's car. Harvey Mall testified that the plaintiff was standing in the highway and he saw her look around and he did not see her again after she looked around. It is also clear from the evidence that the plaintiff was struck immediately after the defendant's car was turned over on to the north line of traffic. We are warranted, in passing on the correctness of the denial by the trial court of the defendant's motion for a directed verdict, to state the facts as they are made to appear by the evidence most favorable to the plaintiff. *Craney v. Union Stock Yards & Transit Co.,* 240 Ill. 602.

The questions of negligence and contributory negligence are usually questions of fact and we find nothing in the record in this case to depart from this rule. *Tio v. Molter,* 262 Mich. 655, 247 N. W. 772. It has been so held in cases where the facts were in many respects similar to those in this case that a person walking on the left-hand side of the highway is not chargeable with the assumption that the driver of a car coming from behind and going in the same direction would attempt to turn out of the line of cars going in his direction and to pass the cars ahead, at such a rate of speed as not to be able to control his car upon discovering someone walking near the left side of the highway in front of the passing automobile. *O'Connor v. Zavaritis,* 95 Conn. 111, 110 Atl. 878. There is no rule of law requiring a pedestrian on a highway, where he has the lawful right to be, to look back at stated intervals of either time or space for vehicles approaching him from the rear. *Darus v. West,* 179 Wis. 279, 191 N. W. 506. A pedestrian walking along the traveled part of a highway may assume that the driver of an automobile approaching him from the rear will exercise ordinary care in keeping a lookout for him. *Darus v. West, supra,* and he need not turn around repeatedly

and constantly to ascertain the approach of the automobile. *McKenna v. Lynch,* 289 Mo. 16, 233 S. W. 175.

There is evidence in the record fairly tending to prove that the plaintiff was in the exercise of ordinary care for her own safety at the time and just prior to the accident, and the trial court did not err in overruling the defendant's motion for a directed verdict and submitting the question of the contributory negligence of the plaintiff to the jury as a question of fact. *Kirman v. Hutchinson,* 254 Ill. App. 469; *Housley v. Noblett,* 234 Ill. App. 59; *Work v. Philadelphia Supply Co.,* 95 N. J. L. 193, 112 Atl. 185; *Belliveau v. Bozoian,* 46 R. I. 83, 125 Atl. 82; *McKenna v. Lynch, supra.*

In the case of *Bouslough v. Schumacher,* 270 Ill. App. 79, there is a statement by the writer of the opinion that indicates that the court agreed with the verdict of the jury in that case that the evidence showed that the plaintiff, was guilty of contributory negligence. The verdict in that case was for the defendant and the judgment was affirmed by this court on the ground that the verdict was not contrary to the manifest weight of the evidence. There is nothing stated in that case which binds this court to any doctrine that a pedestrian on a highway is guilty of contributory negligence solely because of his presence on the highway.

Whether Marvin Coultrip was guilty of driving the car of the defendant in the manner alleged in the first, second, fourth and fifth counts of the declaration were questions of fact which the trial court did not err in submitting to the jury as there is evidence in favor of the plaintiff fairly tending to prove what is alleged in those counts. *Carneghi v. Gerlach,* 208 Ill. App. 340; *Autio v. Miller,* 92 Mont. 150, 11 P. (2d) 1039.

Defendant contends that the evidence does not tend to prove that Marvin Coultrip at the time of the accident was acting within the scope of his employment as the agent of the defendant. The defendant con-

cedes that the evidence on the question whether Marvin was authorized to do an errand for the defendant, and was thus his agent for a specific purpose, is conflicting. Lloyd Alden, a son of the plaintiff, and his wife, Mrs. Lloyd Alden, and Irvin Weiss, testified that on the morning after the accident the defendant, in company with his brother-in-law, E. H. Dannewitz, came to the house of Lloyd Alden, and stated that he was sorry the accident happened; that had he known that his boys were going to take two other boys with them, he would have gone with the boys; that he had sent the boys to Aurora on an errand for him; that if he had gone along the accident would not have happened. This part of the conversation was denied by the defendant and Mr. Dannewitz. Marvin Coultrip and Leslie Coultrip denied that their father had made any request or direction to them that they do an errand for him on the night in question; that they were on the way to Yorkville where they intended to go to a moving picture theater, and that they were not on their way to Aurora; that they intended to turn south at the Yorkville Y and go to Yorkville. The four boys testified that they had first driven to Plano after leaving the Mall residence, where the Mall boys got into the car of the defendant; that they did not see any posters in front of the picture theater in Plano so decided to attend the picture theater in Yorkville. Defendant testified that he owned the car that Marvin was driving on the evening of November 8, but stated that he never used it as he had a car of his own. Under this state of the evidence, it was a question of fact for the jury to decide if Marvin was on his way to Aurora. *Spies v. Sussman,* 264 Ill. App. 528; *Whipkey v. Ashbaugh,* 267 Ill. App. 452.

The defendant complains that instruction number six given for the plaintiff is erroneous because there is no evidence that the defendant directed his son Marvin

to use or drive the automobile in question for any purpose on the evening of the accident. We have found to the contrary. The defendant also contends that instruction number seven, also given for the plaintiff, was improper because it told the jury what facts, although the instruction did not assume those facts to have been proved by the evidence, constitute negligence. This objection is without force. *Toledo, P. & W. Ry. Co. v. Bray*, 57 Ill. 514.

It is also urged by the defendant that the court erred by denying his motion to withdraw a juror and continue the case because of the improper attempt of counsel for the plaintiff to get before the jury evidence, or an intimation, tending to show that the defendant was insured against damage occasioned by the negligent use of the automobile which struck the plaintiff. It appears from the evidence that the witness, Florence Hauffman, had been subpoenaed before the trial. She had been called over the telephone the night before the trial and she was told to be in court the next morning. Who called her does not appear in the evidence. However, she was told by the person who spoke to her over the telephone to come to the office of the attorneys for the plaintiff. By mistake she came to the office of the attorney for the defendant. The attorney for the defendant at the time of the examination of this witness on the trial had information which he relied upon to prove that this witness had been offered money to testify for the plaintiff. It further appears from the evidence that the defendant had expected, presumably before he secured the information alleged to show that the witness had been tampered with, to call her as a witness for the defendant. This was the situation at the time Florence Hauffman was called as a witness in chief by the plaintiff. Upon her examination by the plaintiff the following occurred: Question by plaintiff's counsel (Mr. O'Conor): About how

fast did you have to get going then, if that was the rate of speed you were traveling when you pulled out, in order to pass the car that was immediately in front of you? Statement by counsel for defendant (Mr. Butters): I object to that as misleading. She said they were going 45 miles an hour before getting up with this car.

Mr. O'Conor: Are you sure about it? Mr. Butters: I am.

The Court: Let the witness do the talking.

Mr. Butters: She is your witness.

Mr. O'Conor: Yes. You have not talked with me about this accident until today at noon, have you? Answer. No.

Mr. O'Conor: You never talked with Mr. Wing (one of the attorneys for the plaintiff) about it? Answer: I testified once.

Mr. O'Conor: You testified once. Answer: Yes, sir.

Mr. O'Conor: Did you ever talk to anyone on the other side of this suit? Answer: To the insurance agent.

Mr. Butters then requested that the jury be withdrawn, which was done. Mr. Butters examined this witness to ascertain who had subpoenaed her as a witness, but the witness seemed to be unable to state who had subpoenaed her. Her answers in that respect are not evasive, but they are contradictory. It seems fair to state that the witness did not seem to know who had subpoenaed her. The witness denied that it was understood between her and the counsel for the plaintiff that she would say something while on the witness stand about an insurance company. She denied that any attorney for the plaintiff had offered her money to testify for the plaintiff. Mr. Butters then made a motion to withdraw a juror and continue the case because the plaintiff had brought it before the jury that an

insurance agent had called on the witness and had taken a statement from her. The defendant was then, at his request, given permission to put two witnesses on the stand during the absence of the jury. These witnesses testified that Mrs. Hauffman had told them that one of the attorneys for the plaintiff had asked her how much she would take to testify on the plaintiff's side of the case. Thereafter the court overruled the motion to withdraw a juror and the trial continued.

We cannot say that the witness made the answer complained of for the purpose of influencing the jury. Her testimony contradicts the defendant's argument that the answer was made with the premeditation and under an understanding with counsel for the plaintiff. The condition presented by the bill of exceptions does not bring the situation within the limits of the cases cited by the defendant, but it is governed by the case of *Williams v. Consumers Co.,* 352 Ill. 51.

The appellants' argument in their printed brief is directed entirely, or nearly so, to the proposition that the court erred in not directing the jury to find the defendant not guilty; but there is a short argument that the verdict is contrary to the manifest weight of the evidence. What has been said by this court in the former part of this decision relates to the defendant's motion for a directed verdict. In passing upon the question whether the verdict of the jury is against the manifest weight of the evidence it is necessary for us to weigh the evidence of the different witnesses. We will not at this time review the evidence, as it is stated at length in the forepart of the opinion. The evidence as to whether Marvin Coultrip at the time of the accident was acting as the agent of the defendant and whether he was guilty of negligence that was the proximate cause of the plaintiff's injury, and whether the defendant requested his sons to perform an errand for him, and whether the plaintiff was guilty of con-

tributory negligence that was the proximate cause of her injury, were all stubbornly contested facts before the court and jury. The trial court and jury had the benefit of seeing the witnesses upon the witness stand, their demeanor while testifying, and hearing their testimony, and were in much better position to weigh the testimony, than a court of review. The record in this case does not present as clear and convincing a case as we might desire, but after an exhaustive review of the whole of the evidence we are unable to say that the verdict of the jury is manifestly against the weight of the evidence in the case. We know of no material allegation in the declaration, that there is not sufficient proof to sustain, if the jury believed, which they evidently did, that the plaintiff's witnesses' testimony was true. We find no reversible error in this case and the judgment of the circuit court of La Salle county should be and is hereby affirmed.

*Judgment affirmed.*