MAKAR KAPILONUZ *vs.* FREDERICK W. SUNDMAN.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 3d—decided July 22d, 1937.

*Joseph M. Donovan,* for the appellant (plaintiff).

*Cyril Coleman,* for the appellee (defendant).

MALTBIE, C. J.   The trial court has found the following facts: About 10.40 p. m. on December 28th, 1934, the plaintiff alighted from a trolley car on the northerly side of Pine Street in Bristol.  The paved portion of the street south of the trolley track was twenty feet wide with a sand shoulder of the width of about three feet.  The region is very sparsely settled and there were no street lights in the immediate vicinity.  The plaintiff, dressed in dark clothing, proceeded easterly, walking near but slightly to the right of the center of the paved roadway, taking no precautions to observe whether traffic was approaching on the highway.  The defendant was driving his automobile in an easterly direction along the street at a reasonable speed of twenty-five miles an hour.  There was another car parked in a semi-circular driveway on the south side of and close to Pine Street, with its headlights on bright and pointed in a westerly direction.  The defendant had seen this car for a considerable distance away and shortly before he reached it he turned his own car slightly to the left to allow plenty of room to pass and proceeded without materially diminishing his speed.  The glare of the headlights on the other car interfered materially with his vision as he approached but did not blind him.  Because of the darkness of the road and the darkness of the plaintiff's clothing and partly because his vision was hampered by the lights of the other car, the defendant, although keeping a reasonable and proper lookout, did not see the plaintiff until he turned his car to the left, when the former's back loomed up in front of him, between five and ten feet away.  He immediately applied his brakes and brought his car to a stop within a distance of between ten and twenty

feet, but not before he had struck the plaintiff. The plaintiff had not at any time seen the defendant's car and when he was struck he was slightly to the defendant's right of the center line of the traveled portion of the highway.

The plaintiff seeks several additions and corrections in the finding but only two of these would materially affect the situation. He attacks the finding that the plaintiff was walking slightly to the right of the center of the traveled portion of the roadway, but that finding is amply sustained by the evidence. He also seeks, by attack upon the finding as made and by seeking additional findings, to secure a correction to the effect that the defendant was blinded by the lights of the car, and that because of this fact he did not see the plaintiff. It is true that the defendant did testify that he was momentarily blinded by them. The trial judge might reasonably have concluded that the defendant did not mean that the glare of the lights from the parked car produced a total lack of vision for any considerable time, and might reasonably consider that to find, as requested, that the defendant was blinded by the lights, would give an exaggerated effect to the testimony. Interpreting the finding in the light of the evidence, we construe it as meaning that the vision of the defendant was momentarily so interfered with by the lights of the parked car that he was not able to see the plaintiff in the roadway as he otherwise would have been able to do. Only to this extent could we correct the finding.

The plaintiff asked us to apply to the situation a standard of duty on the part of the defendant that would require him to come to a stop when unable to see the way ahead of him. In *Rozycki* v. *Yantic Grain & Products Co.*, 99 Conn. 711, 122 Atl. 717, we had before us a situation where the vision of the plaintiff

driver was so impaired when he was driving along the roadway at night in the midst of a hard rain, that he could not see ahead for a distance of over twenty feet and did not discover a parked truck of the defendant until he was within ten or twelve feet of it, so close as to be unable to stop before striking it; the defendant, upon the issue of contributory negligence, claimed that the plaintiff was bound as matter of law to drive at a rate of speed which would enable him to stop within such distance as he could see or distinguish an object in the highway ahead of him. We pointed out that varying rules are followed in different jurisdictions, that the law of this State establishes a standard less exacting than the rule claimed, and that the situation presented for consideration various elements of the same nature as those constantly presented in litigation resulting from automobile collisions, so that we could sanction no definite rule of law such as that claimed. See also *Schmeiske* v. *Laubin,* 109 Conn. 206, 145 Atl. 890, and *Peterson* v. *Meehan,* 116 Conn. 150, 163 Atl. 757.

In the situation before us the question whether the defendant was negligent involved a consideration not only of the extent to which his vision was interfered with by the headlights of the parked car, but also of the fact that the plaintiff, dressed in dark clothes, was walking along nearly in the middle of the paved roadway, in a sparsely settled region, when there was a shoulder to the road upon which he apparently could have proceeded, without taking any precautions to see whether an automobile was approaching from the rear. As was the situation in the *Rozycki* case, a material factor in determining whether the defendant was negligent would be the right which he had to assume that no one would take so dangerous a course as did the plaintiff under the conditions and that if

he did, he would keep a reasonable outlook for his own protection. There are undoubtedly cases where it would be negligence in law for the driver of an automobile not to slacken his speed or even stop when his vision is completely cut off by some cause, and when his vision is impaired for any reason, it is incumbent upon him to exercise care commensurate with the danger of injury to others which might result therefrom. But we cannot hold in this case that the defendant was guilty of negligence as a matter of law or that the conclusion of the trial court that he was not guilty of it was so unreasonable that we could override it.

Obviously the defendant did all he could to avoid the collision after he saw the plaintiff in front of him. The application of the doctrine of supervening negligence would have required a finding that the defendant should have seen the plaintiff in time in the exercise of reasonable care to have avoided striking him. The same considerations which prevent our holding as matter of law that the driver was negligent in not seeing the plaintiff before he did preclude the application of that doctrine.

There is no error.

In this opinion the other judges concurred.