Hillsborough, Jan. 7, 1941. } No. 3192.

HELEN D. MURPHY, *Adm'x v*. HENRY F. GRANZ.

*Devine & Tobin (Mr. Tobin* orally), for the plaintiff.

*McLane, Davis & Carleton (Mr. Carleton* orally), for the defendant.

PAGE, J. The decedent was struck by the defendant's automobile while he was walking along the highway from Manchester to Bedford and the defendant was driving in the same direction. The accident happened at midnight of September 5, 1939, or shortly thereafter. The black, hard surface of the highway was twenty-one to twenty-four feet wide. After the accident the decedent's body was found lying on the pavement at least five or six feet in from the west side of the tarvia. Both parties had been proceeding southward.

The defendant urges that it cannot be found that he was guilty of causal negligence as a matter of law, and that it must be found that the decedent's negligence was the sole cause of the accident. The night was dark, it was raining hard, and the road was wet and slippery. The traffic was heavy. The defendant knew that the decedent would probably be walking along the road, knew that he had probably been drinking, and had consequently been watching for him. He was driving at the rate of twenty-five or thirty miles an hour. The road was straight and level.

The defendant saw a car approaching from the opposite direction

at a distance of 400 or 500 feet, and at about the same speed. Though the defendant had his lights on high beam, the lights of the approaching car blinded him so that he could not see the lane on which he was driving, but only the gravel shoulder. He did not reduce speed. Just after the other car passed him, he was for the first time able to see the decedent's form, only four or five feet ahead of him, too late to do anything to avoid the accident. The causal negligence of the defendant may be assumed.

The decedent had been drinking, but there is no evidence to establish the extent, if any, to which he was under the influence of liquor. The jury were not compelled to find that his intoxication contributed to cause the accident. There was testimony about a gravel shoulder sufficiently wide to accommodate a pedestrian. The jury took a view, and it cannot be known whether what they saw confirmed this testimony or negatived it. If it confirmed it, there was yet testimony that the shoulder that night was muddy and puddly. If believed, the jury were not bound to find that the decedent was negligent merely because he traveled on the only part of the highway fit for passage. *Matulis* v. *Gans*, 107 Conn. 562, 632; *Dorrien* v. *Sirois*, 87 N. H. 144, 147, and other cases cited in this opinion.

The pedestrian must exercise due care to protect himself and not to impede traffic unreasonably. The degree of such care varies of course with the circumstances of the particular case.

Courts generally agree that, other things being equal, it is safer for one who walks along a highway to keep to the left side, where he can see perfectly the approach of cars coming in the opposite direction and usually avoid them easily by taking a step to the left. When so walking, he may commonly assume with reason that cars going in his direction will keep to their own right-hand side of the pavement and not come over on his side without warning. Consequently he is not chargeable with negligence as a matter of law if he does not look back and is run down from the rear. The question of his care under such circumstances is typically for the jury. And it seems to make no difference whether the pedestrian thus walks on the pavement by night or by day. *Burns* v. *Coté*, 86 N. H. 167; *Raymond* v. *Hill*, 168 Cal. 473, 482; *Buchignoni* v. *De Haven*, 23 Cal. App. (2d), 76; *O'Connor* v. *Zavaritis*, 95 Conn. 111, 121; *Bouslough* v. *Schumacher*, 270 Ill. App. 79; *Alden* v. *Coultrip*, 275 Ill. App. 306, 317; *Fork Ridge Bus Line* v. *Matthews*, 248 Ky. 419; *Rohrkemper* v. *Bodenmiller*, 287 Mich. 311.

This "presumption of safety" holds for one walking on either

shoulder, or even upon the right hand side of the pavement when visibility is good and the motorist may be fairly thought to be able to see the pedestrian and the latter keeps a straight course, though the situation in the latter case calls for more care on the pedestrian's part. Berry, Automobiles, ss. 3.240, 3.243, 3.244; 5-6 Huddy, Automobiles, ss. 74, 79, 84; and cases cited in those works.

When the pedestrian occupies the right-hand traffic lane at night, the danger being enhanced to a high degree, he must take materially greater precautions. Yet if contrary traffic be lacking and a following motorist has good visibility and plenty of room to pass the pedestrian, the latter (if he walk straight) may be found to rely reasonably upon the care of the driver and his duty to look back will usually be for the jury.

"Custom and common sense have always dictated . . . that pedestrians should walk along the edge of a highway so that they might step aside for passing vehicles with least danger to themselves and least obstruction to vehicular traffic." *Tedla* v. *Ellman*, 280 N. Y. 124, 127.

The decedent in the case before us did not walk upon the edge of the pavement whence he could step aside quickly. Instead of that, it is clear that he was either in the middle of the road or in the middle of the right-hand lane. One walking at night in the middle of the road has been excused for not looking back when the driver had good vision because the pedestrian was nearly under an electric light, and the pedestrian had no warning of the defendant's approach because the latter's lights were poor. *Stone* v. *Gill*, 52 Cal. App. 234. In a somewhat similar case the plaintiff was said to be findably guilty of "an act of imprudence." *Laffler* v. *Lafer*, 142 Atl. Rep. (N. J.), 545. But where cars are coming in both directions so as to affect the driver's vision, the view is that the driver has a right to assume that nobody would take so dangerous a course without reasonable backward looks for his own protection, thus reversing the presumption on which the pedestrian is ordinarily permitted to rely. *Kapilonuz* v. *Sundman*, 123 Conn. 214. In such case, the pedestrian, it has been said, is bound to look to the rear in order that he may not be caught between two cars. *Lindloff* v. *Duecker*, 217 Ia. 326.

When the pedestrian is in the right lane and visibility is poor, though the risk is perhaps less than in the situation just mentioned, it is yet far greater than in the other cases mentioned. With the greater risk, proportionally greater care is demanded of the pedestrian. *Schmeiske* v. *Laubin*, 109 Conn. 206; *Koppenhaver* v. *Swab*,

316 Pa. St. 207. Only a single case has been found which holds that under such circumstances the pedestrian has no duty as a matter of law to look back. *Hatzakorzian* v. *Company*, 197 Cal. 82.

Every other case involving similar facts has reached a different conclusion. The pedestrian has been held to the duty of looking to the rear constantly. *Kessel* v. *Hunt*, 215 Ia. 117; *Lindloff* v. *Duecker*, 217 Ia. 326; *Taylor* v. *Wistey*, 218 Ia. 785. The assumption of safety, reasonable under conditions of good visibility, no longer excuses total failure to watch to the rear. *McKenna* v. *Lynch*, 289 Mo. 16. It has even been said that pedestrian use of the street under such circumstances is negligent as a matter of law if there is a convenient sidewalk. *Willis* v. *Harby*, 159 App. Div. (N. Y.), 94. We need not follow those results fully on the facts presented here. It is at least as much the pedestrian's duty to avoid being hit as it is for the motorist to watch out for him, and failure to look back while walking two hundred feet is "almost inviting" disaster. *Sylvia* v. *Eyth*, 259 N. Y. S. 85. The motorist may rely on the pedestrian's exercise of care as fully as the pedestrian may rely on the motorist's. *Ignatowitch* v. *McLaughlin*, 66 N. D. 132.

The decedent had a perfect right to be where he was. But since he chose to be there, he was bound as long as he remained to exercise the high degree of care his situation made necessary. He was not in a position where he could rely on the defendant's care to save him from disaster. If the decedent kept his position, the defendant would have great difficulty in seeing him if there were any contrary traffic, perhaps might not see him at all. The defendant, suddenly coming upon the decedent, would have only two ways to turn. If he turned right, he would get upon a sloppy shoulder and very likely into a ditch. If he turned left he might become involved in a collision with another car. That situation was made imminent by the decedent's own act in choosing to walk in the middle of the right lane (if he was in that position rather than in the more dangerous middle of the pavement).

For practical purposes the defendant was left much in the position of the locomotive engineer who overtakes a man walking between the rails; the engineer must keep to his path, and can only try to stop. The decedent, however, could not claim, as the track-walker sometimes does, that he was warranted in walking in the path of the machine by the fact that he could reasonably expect that no machine was due (*Brown* v. *Railroad*, 73 N. H. 568) or that he had looked when several hundred feet north (*Bourassa* v. *Railway*, 75 N. H. 359).

248

There is no dispute in the evidence as to whether or not the decedent was on the pavement (*Bennett* v. *Larose*, 82 N. H. 443) and in that respect nothing was for the jury. The decedent had traveled this road repeatedly on Saturday nights. He would have known, if in the exercise of average care, that automobiles ran on no time-schedule, that on such nights the traffic was heavy, and that a car might overtake him at any moment.

Every advantage for the saving of the situation lay with the decedent, who was at the focus of danger. He could see the whole situation better than the defendant, and he could more easily alter it than could the defendant. He could place doubtful reliance upon the defendant's reducing speed, when faced with oncoming lights, sufficiently to avoid trouble. It is in evidence that the decedent had both walked and ridden along this road on this and other Saturday nights. He could not have been ignorant of the common knowledge that cars pass each other at night at very considerable speeds. If the defendant was negligent in taking the chance that a pedestrian might be in a blind spot, the pedestrian was equally negligent in taking the chance that the defendant would not take a chance.

Under the circumstances presented, the decedent had the legal duty, when he observed a car coming from the south, to look back to see whether a following car was likely to overtake him at about the time the north-bound car passed, and to act according to what he should have seen. If he had looked back with the least degree of care he could have seen the defendant's high-beam lights and moved to the side, for the road was straight, level, and without confusing street lights. If it be said that there is no direct evidence that he did not so look, it may be answered that there are only three possibilities. First, the decedent did not look. Second, he looked, but not carefully. Third, he looked carefully, and failed to act carefully after looking. In any case he was contributorily and causally negligent. *Sarkise* v. *Railroad*, 88 N. H. 178, 180; *Niemi* v. *Railroad*, 87 N. H. 1, 3; *Fraser* v. *Railway*, 84 N. H. 107. And if he had lived and testified that he looked carefully and did not see the defendant's car, he must have been disbelieved. *Brown* v. *Mailhot*, 89 N. H. 240. He had the duty of using some care and reasonable men could not find that he used any. *Robinson* v. *Railroad*, 85 N. H. 474.

The defendant had no last clear chance.

*Judgment for the defendant.*

All concurred.