**KOMER v. SHIPLEY.**

No. 11490.

Circuit Court of Appeals, Fifth Circuit.

April 16, 1946.

Rehearing Denied May 15, 1946.

Dewey Knight, of Miami, Fla., for appellant.

Abe Aronovitz, of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The plaintiff, a citizen of New York, brought suit for personal injuries in the Circuit Court of Broward County, Florida, against the defendant, a citizen of Michigan. The defendant removed the case to the federal court on the ground of diversity of citizenship. Plaintiff alleged that on January 4, 1939, at about 10 p. m. he was walking eastwardly along the northerly side of the Hollandale Beach Road in Broward County, Florida; and that the defendant was driving his automobile easterly on said road and did negligently drive the same into and against plaintiff, and as a result plaintiff sustained serious injuries. The defendant answered: (a) He was not negligent. (b) The plaintiff was contributorily negligent. (c) For the consideration of the sum of $250, plaintiff had executed a general release in favor of the defendant under date of January 25, 1939. The plaintiff replied to defendant's allegation of a general release by pleading that at the time of the execution of the release the plaintiff lacked the mental capacity to understand and appreciate the nature of the instrument.[1] The court without a jury heard in a separate trial evidence on the question of mental incapacity. The court then held that the defendant obtained the release while the plaintiff was mentally incompetent, and, therefore, it was not binding upon him. By leave of the court the defendant thereupon pleaded that the plaintiff ratified the release by retention of the $250 after he regained competency; that after the 15th day of April, 1939, the plaintiff was of sound mind and understanding, and that thereafter he retained the consideration for a period of more than one year. On April 25, 1940, the plaintiff did, through his attorney, for the first time tender back to the defendant the said sum. In a trial of the merits, without a jury, the court found that the defendant was negligent and that the plaintiff was free of contributory negligence; that the plaintiff was mentally incompetent to execute the release; and that the defense of ratification had not been sustained. Judgment was accordingly entered in favor of the plaintiff in the sum of $7,500 plus costs. Motion for new trial was filed and denied, and the defendant appealed.

The defendant urges that the trial court's rejection of the plaintiff's pleaded allegations of fact and his testimony and the adoption of the testimony of the police officer, Larson, was reversible error. Plaintiff pleaded that he was walking along the northerly side of the Hollandale Beach Road at the time of the collision, and he testified that he was walking on the grass. Defendant testified that at the time of the collision his automobile was on the right-hand side of the road. The diagram prepared by the officer, Larson,[2] at the trial shows that the location of the body of a dead bird around which plaintiff walked immediately before the collision was to the left of the center of the road, and that the location of plaintiff's body immediately after the collision was to the left of the center of the road, and that the left skid mark of defendant's car on the pavement was to the left of the center of the road.[3] This diagram supported the finding of the district court that the collision occurred within the northerly half of the paved portion of the road and, therefore, to the left of the center. Since the plaintiff's pleading afforded defendant a generalized summary of the case, it complied with the rules of pleading applicable to the federal district court.

Vol. 1, Moore on Federal Practice, at page 450, states:

"The pleading rules are designed to develop the respective stories of the parties as to the past events out of which the litigation grew. They are not restricted by

[1] He also pleaded (1) a mutual mistake of fact whereby the parties erroneously believed that the plaintiff was suffering merely from a temporary and trivial injury, whereas he was actually suffering from a subdural clot on the brain; and (2) the release was obtained through mutual mistake of fact in that the parties thereto did not contract on the basis of permanent injuries of the plaintiff. Defendant's motion to strike these two grounds was granted; the motion as to the other ground was denied.

[2] He was on the scene and made an investigation following the accident.

[3] The location of plaintiff's body upon the diagram was made by defendant. He testified at two places in the record that the diagram was a true representation of the facts.

worry and confusion about the form of trial.

\* \* \* \* \* \*

"\* \* \* at the trial stage the case is to be heard on the merits, and is not to be hamstrung by faulty pleadings, unless actual, not conjectural, prejudice results from the faulty pleadings."

Vol. 1, Moore on Federal Practice, at page 440, states: "The modern philosophy concerning pleadings is that they do little more than indicate generally the type of litigation that is involved. The pleadings of a personal injury action cannot catch within their pages a photographic likeness of the accident. A generalized summary of the case that affords fair notice is all that can be expected." See official form 8; 4 Moore 8.47.

■ The defendant argues that the law of Florida did not require that the defendant's car be wholly on the right-hand side of the roadway. The common law without dissent throughout the states is that where a pedestrian is walking on the left half of the highway and where an automobile on the left half of the highway approaching the pedestrian from his rear collides with the pedestrian, a question of fact as to the negligence of the driver is presented to the trier of the facts. Among the cases applying this common-law rule are: Matazasoszki v. Jacobson, 1936, 122 Pa.Super. 180, 186 A. 227; Igo et al. v. Smith, 282 Ky. 336, 138 S.W.2d 497; Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N. W.2d 114; Peterson v. Meehan, 116 Conn. 150, 163 A. 757; Rohrkemper v. Bodenmiller, 287 Mich. 311, 283 N.W. 591; Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 10, Part 1, Perm. Ed., pp. 684, 685; Raymond v. Hill, 168 Cal. 473, 143 P. 743; Ralston v. Tomlinson, 1940, 207 Minn. 485, 292 N.W. 24; Sertic v. McCullough, 1936, 155 Or. 216, 63 P.2d 884; Hubbard v. Thrasher, 26 Ala.App. 252, 157 So. 680; Kelly v. Schmidt & Zeigler, 142 La. 91, 76 So. 250; Dreyfus v. Daronco, 253 Mich. 235, 234 N.W. 587.

In Johnson v. Anoka-Butte Lumber Co., 141 Neb. 851, 5 N.W.2d 114, 115, the Supreme Court of Nebraska, in a syllabus prepared by it, stated:

"Where a pedestrian, \* \* \* is walking at night on the left-hand side of the highway and is struck by a vehicle approaching from his rear, it is for the jury to determine if the operator of the vehicle was negligent in not seeing the pedestrian in time to avoid the accident.

"Under such circumstances the pedestrian had the right to assume that the driver of a vehicle approaching from the rear would exercise ordinary care in keeping a lookout for him and others using the highway."

Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 10, Part 1, Perm. Ed., pp. 684, 685, states: "Where the theories of opposing parties are conflicting, issues of fact or of mixed law and fact should be submitted to the jury. Thus the negligence of a motorist who \* \* \* drove on the wrong side of the street or road \* \* \* is a question of fact for the jury, in the absence of any legal defense barring the action, if there is any substantial evidence supporting the plaintiff's claim."

In Raymond v. Hill, 168 Cal. 473, 143 P. 743, 747, the Supreme Court of California said: "But under the circumstances shown in this case, certain very important considerations differentiate the rights and duties of plaintiffs and defendant. Some of these will readily occur to mind. One is that the pedestrians were traveling on a part of the road and under circumstances where they could reasonably look for vehicles approaching them from the front, but would not naturally be expected to contemplate that an automobile would come up behind them, and they were under no legal obligation to look back to see whether they were in danger of being struck from behind. Elliott, Streets & Roads (3d Ed.) § 1088. Another is that to the driver of the automobile the pedestrians were plainly visible. The automobile was not visible to the pedestrians. Still a third is that it was within the power of the automobile to inflict injury or death. Such was not the power of the pedestrians. Upon the part of the driver of the automobile, therefore, we have a known approach to foot passengers, with the power to inflict grave injury. Upon the part of the foot passengers we have the unconsciousness of such approach, with absolute inability to inflict injury and a measurable inability to avoid the infliction of injury. While both parties are charged only with the exercise of the same degree of care, it is manifest that the amount of that care by law exacted of the driver of the motor vehicle is far greater than the amount exacted of the foot passengers. Of the driver of a vehi-

cle under such circumstances, the law in terms requires that he shall not only give reasonable warning of his approach, but 'use every reasonable precaution to insure safety.' * * * "

The contention that the plaintiff's failure to watch for cars approaching from his rear was contributory negligence as a matter of law, and as such should bar his recovery, finds no support in the jurisprudence.

The courts generally hold that where a pedestrian is walking on the left half of the road facing traffic that would approach him and where an automobile approaching from his rear on the left half of the highway collides with the pedestrian, contributory negligence on the part of the pedestrian is a question for the trier of the facts. Matzasoszki v. Jacobson, supra; Igo et al. v. Smith, supra; Cf. Johnson v. Anoka-Butte Lumber Co., supra (the court held as a matter of law the pedestrian was not contributorily negligent); Murphy v. Granz, 91 N.H. 244, 17 A.2d 449; Burns v. Cote, 86 N.H. 167, 164 A. 771; Peterson v. Meehan, supra; O'Connor v. Zavaritis, 95 Conn. 111, 110 A. 878; Rohrkemper v. Bodenmiller, supra; Randolph v. Hunt, 41 Cal.App. 739, 183 P. 358; Raymond v. Hill, supra, California.

In Matzasoszki v. Jacobson, supra, the Superior Court of Pennsylvania, 1936, said [122 Pa.Super. 180, 186 A. 228]:

"There was no sidewalk, and in its absence pedestrians' rights upon the paved roadway are equal to those of vehicles. Petrie v. E. A. Myers Co., supra [269 Pa. 134, 112 A. 240]. That a pedestrian fails to turn and look back while walking in the street is not of itself sufficient to convict him of contributory negligence. (Lamont v. Adams Express Co., 264 Pa. 17, 107 A. 373; Berry on the Law of Automobiles (2d Ed.) § 217), and no other fact is here shown tending in that direction. So the question of contributory negligence could not be decided as one of law. In fact, the trial judge did not rule the case against the plaintiff upon that ground.' See, also, Schoepp v. Gerety, 263 Pa. 538, 107 A. 317; Leonard Co. v. Scranton Coca-Cola Bottling Co., 90 Pa.Super. 360.

"There was evidence that when the defendant's car started to skid, it was past the middle of the road and on the side of the road devoted to traffic in the opposite direction, this of itself may have caused the injury to plaintiff."

In Murphy v. Granz, 91 N.H. 244, 17 A. 2d 449, 451, the Supreme Court of New Hampshire stated:

"The pedestrian must exercise due care to protect himself and not to impede traffic unreasonably. The degree of such care varies of course with the circumstances of the particular case.

"Courts generally agree that, other things being equal, it is safer for one who walks along a highway to keep to the left side, where he can see perfectly the approach of cars coming in the opposite direction and usually avoid them easily by taking a step to the left. When so walking, he may commonly assume with reason that cars going in his direction will keep to their own right-hand side of the pavement and not come over on his side without warning. Consequently, he is not chargeable with negligence as a matter of law if he does not look back and is run down from the rear. The question of his care under such circumstances is typically for the jury. And it seems to make no difference whether the pedestrian thus walks on the pavement by night or by day. * * * "

In Peterson v. Meehan, supra, the Supreme Court of Errors of Connecticut said [116 Conn. 150, 163 A. 758]: " 'Pedestrians are not necessarily confined to the use of the sidewalk or footpath provided for them, and it is not negligence per se for them to use the part generally devoted to vehicles. In fact, such user may in some cases be necessary. In this as in other instances, due care is required of the pedestrian.' Huddy, Cyclopedia Automobile Law (9th Ed.) Vols. 5, 6, § 103; Matulis v. Gans, 107 Conn. 562, 564, 565, 141 A. 870. 'Sidewalks are for the exclusive use of pedestrians, but the remaining portion of the highway is not for the exclusive use of vehicles. In the absence of statutory or municipal regulations affecting the question, the pedestrian has equal rights in the street with the operator of an automobile.' Cole v. Wilson, 127 Me. 316, 143 A. 178, 179; * * *. A pedestrian is not guilty of negligence as a matter of law in walking upon the roadway rather than on the sidewalk, even if the sidewalk is usable. * * * The court correctly charged the jury upon this point, that while it is not negligence as a matter of law for a pedestrian to walk in the roadway, he is required, if he does so, to use greater care than would have been required of him if walking on a sidewalk."

In Raymond v. Hill, supra, the Supreme Court of California said: "As to foot passengers, the old common-law rule declaring the King's highway to be 'fair and free' has not been modified in this state by any positive enactment. So that it still remains the law that foot passengers have the right to use and traverse the highway at all its points, being chargeable only for the exercise of a due amount of care, which due amount of care, in its quantum, is measured by the use which the pedestrian actually makes. Thus in this state, even in populous streets of cities, pedestrians are not restricted to the crossings in traversing a street, but may cross it at any point. And the same is true of their right to walk along the roadbed of a highway."

■ While the Florida cases cited by counsel may be distinguished from the instant case on their facts, the reasoning employed by the Supreme Court of Florida would indicate that the common law on the points of defendant's negligence and plaintiff's contributory negligence is in accord with the law of Florida.

In Prior v. Pounds, 113 Fla. 308, 151 So. 890, at page 891, the Supreme Court of Florida said: "The rule is well settled that pedestrians and travelers by automobile or other vehicle have equal and reciprocal rights in the use of the public highways and that the right of each must be exercised in a reasonably careful manner with reference to the reciprocal right of the other, depending on the time, location, amount of traffic, physical circumstances, and all other elements that affect travel. * * *"

In Florida Motor Transport Co. v. Hillman, 87 Fla. 512, 101 So. 31, at page 33, the Florida Supreme Court said:

"The driver of an automobile is required to exercise reasonable care to avoid injury to persons lawfully upon the highway. The pedestrian and the automobile driver have equal rights on the street. The obligations of pedestrians and automobile drivers using the highways set apart for vehicles are reciprocal. See Lane v. Sargent, 1 Cir., 217 F. 237; Wollaston v. Stiltz, 1 W.W.Harr. 273, 114 A. 198; Wortman v. Trott, 202 Ill.App. 528; Pool v. Brown, 89 N.J.L. 314, 98 A. 262.

"The evidence did not tend to show an unavoidable accident; if it had, there would have been no liability, because an automo-

bile driver is not an insurer of the limbs and lives of pedestrians. In this case the evidence did tend to establish pre-existing negligence upon the part of the driver of the bus, in that the plaintiff and his automobile were in plain view of the driver of the bus and could have been seen by him several hundred feet away, but his failure to observe these objects in the roadway in time to avoid the accident constituted negligence and careless conduct, which was the proximate cause of the injury, because, had he exercised the prudence and care which the law cast upon him, he could have avoided the accident, according to the evidence adduced for the plaintiff, if his automobile or motor bus was traveling at a reasonable rate of speed."

■ Upon the evidence presented in this case, therefore, a finding that the defendant was negligent and that the plaintiff was not contributorily negligent, was not reversible error.

The defendant next argues that the plaintiff failed to sustain by a preponderance of proof that he was mentally incompetent to understand the nature and effect of the general release executed by him, but that, if he was mentally incompetent, he ratified said release and settlement by retaining the consideration therefor for a period of more than one year after he admittedly completely regained his mental faculties.

■ A release executed by a person mentally incapable of contracting is voidable. 45 Am.Jur. 677, § 5. The issue of incompetence is one of fact to be determined by the trier of facts. 28 Am.Jur. 769, § 144. See Travis v. Travis, 81 Fla. 309, 87 So. 762.

■ The court below found the release was obtained while the plaintiff was mentally incompetent due to the injury he had sustained. Evidence supporting this finding of fact appears in the record. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

■ The retention of the consideration by one sui juris, with knowledge of the facts, will amount to a ratification of a release executed by him in the settlement

866

of a claim, where the retention is for an unreasonable time under the circumstances of the case. 45 Am.Jur. 690, § 25.

 Whether a ratification resulted from the retention of the amount paid on the execution of a release has been held to be a question for the jury. See cases cited 76 A.L.R. at page 349. With consideration of plaintiff's difficulty in employing legal counsel the court below did not err in holding that a retention of the amount paid for more than one year was not unreasonable, hence did not amount to a ratification.

 Finally, the defendant contends that the judgment for $7,500 was grossly excessive under the evidence in this case. Since the evidence in the record supports the finding, we will not disturb it.

The judgment appealed from is affirmed.