ARTURO IZQUIERDO, Plaintiff and Appellant, *v.* JULIO IZQUIERDO SERRANO, JOSEFA GODÍNEZ, ETC., ET AL., Defendants and Appellees.

No. 11494.   Submitted June 11, 1956.—Decided June 26, 1957.

*Juan Nevárez Santiago* for appellant.   *Diego Guerrero Noble* and *Carlos D. Vázquez* for appellee Godínez.   *Emeterio C.*

*Rodríguez* and *Baldomero Roig Vélez* for appellee, The West Indies Missions Board of the United Lutheran Church in America.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Arturo Izquierdo filed a complaint of "Nullity, Revendication, Claim for Fruits, and Other Reliefs" against Julio Izquierdo Serrano, the heirs of Josefa Godínez (naming them), The West Indies Missions Board of the United Lutheran Church in America, Inc.,[1] and José Antonio Izquierdo Rivera. In the first cause of action it is alleged that Dr. Eladio Izquierdo Serrano died intestate on October 10, 1932, leaving as his sole and universal heirs his children, Alfredo Izquierdo Negrón and José A. Izquierdo Rivera; that at his death Dr. Izquierdo Serrano was the owner of the properties described under letters A, B, C, D, E, and F; that the property described under letter "A" is recorded in the Registry of Property of Bayamón under No. 606 of Cataño, and that on October 11, 1938 it was sold at a tax sale and adjudicated to Josefa Godínez, and it is at present occupied by the defendant, Julio Izquierdo Serrano; that the property described under letter "B" is at present No. 640 of Cataño which was sold at a tax sale on above-mentioned date and awarded to Josefa Godínez, and is also occupied at present by the defendant, Julio Izquierdo Serrano; that the property described under letter "C", grouped with properties Nos. 642, 610, and 640, thereby forming property No. 660, was also sold at a tax sale on above-mentioned date, and awarded to Josefa Godínez, who sold it as thus grouped to María Felipa Viana, who thereafter sold it to Manuel Barreto Pérez, and the latter to The Lutheran Church, and is recorded at folio 120, volume 9 of Cataño, the property thus grouped being described under letters C, D, and E; that the property described under letter "D" was sold at public auction on September 24, 1938,

---

[1] We will hereafter refer to the West Indies Missions Board of the United Lutheran Church in America merely as The Lutheran Church.

adjudicated to Josefa Godínez, and grouped with property "C"; that the property described under letter "E" was likewise consolidated with property "C", sold at public auction on August 30, 1938, awarded to Josefa Godínez, who thereafter sold it as above stated, and is occupied at present by The Lutheran Church; that the property described under letter "F" was sold at public auction on August 30, 1938, and awarded to Josefa Godínez, and is held at present by Julio Izquierdo Serrano or The Lutheran Church; that while those properties were in possession of Julio Izquierdo Serrano and Josefa Godínez, they collected and appropriated for themselves the rents yielded, and under those circumstances they conceived a plan to take for themselves the properties in question and to deprive the legal heirs of Dr. Eladio Izquierdo Serrano of the said properties; that, despite the fact that they received sufficient income to take care of the property taxes and the preservation of the properties, the said Julio Izquierdo Serrano and Josefa Godínez failed to pay the taxes thereon for the deliberate purpose of causing, as they did cause, that the properties be sold on above-mentioned dates and adjudicated to Josefa Godínez; that since Alfredo Izquierdo Negrón and José A. Izquierdo Rivero succeeded Dr. Eladio Izquierdo Serrano on April 27, 1936, Alfredo sold all his rights in the inheritance to Manuela Quintero Izquierdo and Manuel Godínez Caloca, share and share alike; that the share acquired by Manuel Godínez Caloca was intended to conceal the real acquirer of such share, who was his sister, Josefa Godínez; that Manuela Quintero Izquierdo assigned and sold her rights and actions in the described properties to the plaintiff, Arturo Izquierdo, by an instrument signed on April 6, 1954, in the city of Miami, Florida, the lawful owners of the described properties being Arturo Izquierdo who held 25%, José Antonio Izquierdo Rivera, 50%, and Manuel Godínez Caloca 25%.

As a second cause of action it was alleged in the complaint that all the properties described under letters A and

F were sold at public auction, specifying the date on which they were sold and their selling price; that the same were awarded to Josefa Godínez, who was married to the defendant, Julio Izquierdo Serrano; and that each and every one of the said tax sales were fraudulently procured for the purpose of depriving the heirs of Dr. Izquierdo Serrano of those properties, since no notice was given in any one of them to the said heirs to give them an opportunity to redeem the properties, notwithstanding the fact that the Treasurer of Puerto Rico knew the heirs and assigns of Dr. Izquierdo Serrano at the time of the commencement of the proceeding which culminated in the public auction and award to Josefa Godínez of each and every one of the properties.

As a third cause of action, it was alleged that since the public auctions of the properties in question are null and void, the subsequent transfers made by Josefa Godínez are likewise null and void. And as a fourth cause of action, it was alleged that the described properties have or should have produced rent in the sum of $20,000.

It is further alleged in the complaint that José A. Izquierdo Rivera and the defendants surnamed Godínez are joined as defendants, because the former as well as the latter are necessary parties and they refused to join as plaintiffs in the complaint; that Julio Izquierdo Serrano is joined as a defendant in his capacity as surviving spouse of Josefa Godínez; and that the properties in question have a total value of $50,000. It is prayed, among other things, that the registration made in the Registry of Property of Bayamón in favor of the persons mentioned be cancelled.

The Lutheran Church, Manuel Godínez, and Julio Izquierdo Serrano filed separate motions of dismissal on the ground that the complaint does not state facts sufficient to determine a cause of action. From the order entered by the Superior Court of Puerto Rico, Bayamón Part, granting the motion to dismiss filed by the former (The Lutheran Church), we quote the following paragraphs:

"From the complaint it appears that the defendant, The West Indies Missions Board of the United Lutheran Church in America, Inc., acquired the property, which consists of a group of properties previously consolidated and sold at a tax sale, by purchase from Manuel Barreto Pérez; that the latter acquired the same by purchase from María Felipa Viana; and that the latter acquired it by purchase from Josefa Godínez, to whom they were awarded at the public auctions referred to.

"The complaint does not allege that the defects noted therein, if any, appear from the Registry of Property, and it is a well-settled rule of the Supreme Court of Puerto Rico that the acts or contracts done or executed by a person who appears from the Registry to have a right so to do WILL NOT BE INVALIDATED WITH RESPECT TO THIRD PERSONS after the same have been admitted to record, although the right of the party executing them be subsequently annulled or resolved by virtue of a title of prior date not recorded in the Registry or FOR REASONS WHICH DO NOT CLEARLY APPEAR FROM THE REGISTRY ITSELF. *Rodríguez* v. *Castaing, et al.,* 7 P.R.R. 360; *Expósito* v. *Robert,* 11 P.R.R. 14; *Abella* v. *Atanacio* [sic] *et al.,* 14 P.R.R. 485, and in particular *Annoni* v. *Heirs of Nadal,* 59 P.R.R. 638. This is also provided by art. 34 of the Mortgage Law. It is well to indicate that, although the complaint alleges that on April 27, 1936 Alfredo Izquierdo Negrón sold all his rights and actions in the inheritance of Dr. Eladio Izquierdo Serrano to Manuela Quintero Izquierdo and Manuel Godínez Caloca, share and share alike, and that Manuela Quintero assigned and sold on April 6, 1954 all her rights and actions to plaintiff herein, the complaint does not allege either that such hereditary rights and subsequent assignments and transfers were recorded or mentioned in the Registry of Property at the date in which the property was acquired by third persons. Consequently, there is nothing in the Registry, according to the complaint itself, that could serve as notice to the said defendant of possible claims against her, or as to the alleged defects."

Plaintiff requested reconsideration, but the same was denied. Regarding the other two motions to dismiss, the lower court concluded "that this complaint does not state a cause of action against any of the defendants." Plaintiff then moved for judgment because the complaint was not

susceptible of amendment. The court rendered judgment as requested and plaintiff appealed therefrom.

■ Appellant's sole contention is that the lower court erred "in granting the motion to dismiss." As stated in *Cruz* v. *Ramírez*, 75 P.R.R. 889, 892:

" . . . the sufficiency of a complaint should be considered in the light of the situation most favorable to plaintiff, and . . . a complaint should not be dismissed unless it appears with certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim. *Cruz* v. *Ortiz,* 74 P.R.R. 298, 301, and cases cited therein. According to the system of the Rules of Civil Procedure, the purpose of the complaint in itself is not to state with precision the issues, but to notify the defendant of the essence of the claim against him. (*Komer* v. *Shipley,* 154 F.2d 861; *Moore* v. *Erie County Agr. Society,* 12 F. R. D. 6; Moore's *Federal Practice,* 2d ed., Vol. 2, pp. 1648, 1649, § 8.13.) One of the principal reasons for justifying this liberal construction of a complaint is the fact that the parties have recourse to other reliefs, under the rules, to determine with more accuracy the context, the exact nature, and the particulars of plaintiff's claim; such relief includes discovery, inquiry and pre-trial hearing. *Hickman* v. *Taylor,* 329 U. S. 495, 500, 501; 2 Moore, *op. cit.,* at p. 1652, § 8.13."

■ Let us see whether the complaint, interpreted in the light of the situation most favorable to plaintiff, states a cause of action against the defendants or any one of them.

As to The Lutheran Church, there is no question that the complaint does not state facts to constitute a cause of action. It appears clearly from the complaint that as soon as the properties described under letters C, D, and E were sold at public auction,[2] they were recorded in the Registry of Property in favor of the grantee, Josefa Godínez; that the latter sold the properties to María Felipa Viana, who in turn transferred them to Manuel Barreto Pérez, from

---

[2] We will not refer here specifically to the property described under letter F because, as to this, it is stated in the complaint that Julio Izquierdo Serrano or The Lutheran Church holds the possession at present, without specifying which one, nor how either one came into such possession.

whom the defendant, The West Indies Lutheran Church, had acquired them. However, the complaint does not reveal that the defects in the public auctions, or any defects which may render defendant's title void, appear from the Registry of Property. The Lutheran Church is, therefore, a third party which acquired in good faith. The action brought does not lie against it. As stated in the summary of *Pérez* v. *Cancel*, 76 P.R.R. 625:

"Third-party mortgagees are those who acquire by onerous title from a person who in turn acquired in a distress proceeding for delinquent taxes, when it is not shown that the latter took part in the proceeding or when the registry does not clearly show the defect of acquisition in the proceeding in question."

See, also, *Hernández* v. *Caraballo*, 74 P.R.R. 27, 34.

Nor does the complaint state a good cause of action against Manuel Godínez Caloca. It will be recalled that it is specifically alleged therein that Dr. Izquierdo Serrano died intestate in 1932, leaving properties which were inherited by his children, Alfredo Izquierdo Negrón and José A. Izquierdo Rivera, as his sole and universal heirs; also, that in 1936 Alfredo sold all his rights in the said inheritance to Manuela Quintero Izquierdo and Manuel Godínez Caloca, share and share alike; and that in 1954 Manuela assigned and sold her rights and actions in the said properties to the plaintiff, Arturo Izquierdo. Therefore, the title of defendant Godínez Caloca, as acquirer of 25 per cent of the properties, stems from the same source as plaintiff's. Consequently, even if the latter's claim were successful, such success would in no way affect Godínez Caloca's share. The plaintiff seems to so admit it when he expressly alleges in his complaint that the owners of the described properties are he (Arturo Izquierdo) in a proportion of 25 per cent, José Antonio Izquierdo Rivera in a proportion of 50 per cent, and Manuel Godínez Caloca in a proportion of 25 per cent. Therefore, the lower court acted correctly in granting the

motions of dismissal filed by The Lutheran Church and Manuel Godínez Caloca.

■■ However, the situation is different as to Julio Izquierdo Serrano. He is not a third party. *Cf. Rivera v. Meléndez*, 72 P.R.R. 404, 410; *Olmedo v. Rivera*, 65 P.R.R. 45, 49. For the purposes of the motion to dismiss, the allegations of the complaint must be taken as true. *Boulón v. Pérez*, 70 P.R.R. 941; *Secretary of Labor v. Bird*, 78 P.R.R. 161, 165; *Sacarello v. Retirement Board*, 75 P.R.R. 253, 259; *Walker v. Tax Court*, 72 P.R.R. 651, 658; *González v. Hawayek*, 71 P.R.R. 493, 494. Here it is clearly alleged that he, Julio Izquierdo Serrano, was the husband of the grantee, Josefa Godínez; that while the described properties were in possession of both, they collected the rents yielded for their own benefit, and conceived a plan to take for themselves the properties in question and to deprive the legal heirs of Dr. Izquierdo Serrano of the said properties; that, despite the fact that they received sufficient income to take care of the property taxes, they failed to pay the same for the deliberate purpose of causing, as they actually did, the sale of the properties at public auction and their adjudication to Josefa Godínez, and that each and every one of the said auctions was fraudulently procured, since in none of them notice was given to the heirs of Dr. Izquierdo Serrano. Therefore, it is expressly alleged in the complaint that Julio Izquierdo Serrano was aware of the defects which invalidate his title to properties A, B, and F. See *Olmedo v. Rivera, supra; Ninlliat v. Suriñac et al.*, 24 P.R.R. 61, 69; *Carlo v. Ferrer*, 27 P.R.R. 203, 223; *Falcón v. Heirs of Ignacio*, 33 P.R.R. 933, 937. As to him, the complaint states a good cause of action. Therefore, the lower court erred in rendering judgment dismissing the complaint as to Julio Izquierdo Serrano.[3]

---

[3] In its order of September 10, 1954, the trial court stated that the complaint "does not state a cause of action against any of the defendants." The court was not justified in reaching such a conclusion as to those defendants who did not appear at all in the proceeding.

The judgment appealed from will be affirmed as to The Lutheran Church and Manuel Godínez Caloca, reversed as to Julio Izquierdo Serrano, and the case will be remanded to the original court for further proceedings as to the said defendant.

Mr. Justice Negrón Fernández and Mr. Justice Sifre concur in the result.

---

MR. JUSTICE BELAVAL, dissenting.

I do not agree on one point of the issue in controversy herein—the convalidation by the admission to record of the title of the Lutheran Church, which is decided by applying the case of *Pérez* v. *Cancel*, 76 P.R.R. 625, 633–34 (Marrero, 1954). When the case of *Pérez* v. *Cancel*, *supra*, was decided, I dissented as to the pronouncement made therein to the effect that, when a title has been found to be null and void, the subsequent acquirers appearing from the Registry of Property must not suffer the effects of the nullity. Using the classical phrase of León Galindo y de Vera, "Registration is not water of the Jordan which blots out every stain, nor can the Registrar who does not hear the adverse party and decides by his own judgment without argument and without knowledge on many occasions, substitute the courts, making irrevocable decisions on the permanent interests of society." 2 Galindo Vera y Escosura 487 (ed. by Establecimiento Tipográfico de Felipe Pinto y Oravio, 1896). Since this is the second time that I am forced to dissent on this matter, I wish to formulate in writing my objection to that reasoning, lest this second dissent be considered as whimsical or extravagant use of the autonomy enjoyed by the judges of this Court to formulate, separately, their objections to the ruling of the majority.

The error which we have committed in the past consists in having applied the Spanish jurisprudence corresponding to the Spanish Mortgage Law, after its various reforms, to

the Puerto Rican Mortgage Law which, for that matter, is still identical with the Spanish Mortgage Law of 1861 which was extended to the Overseas Provinces. Let us consider first the table of analogies and dissimilarities:

*Spanish Law of 1861*

Art. 33. Instruments or contracts which are null under the law are not validated by their admission to record.

Art. 34. Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have once been recorded, although later the interest of such party is annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from the said registry.

Only by virtue of a recorded instrument may another later instrument, also recorded, be invalidated to

*Puerto Rican Law of 1893*

Instruments or contracts which are null under the law are not validated by their admission to record.

Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry.

Only by virtue of a recorded instrument may another later instrument, also recorded, be invalidated to

the prejudice of third persons.

The provisions of this article shall not be effective until one year after this act takes effect, and shall at no time apply to an instrument recorded in accordance with the provisions of article 397, unless the prescription has validated and secured the interest to which said instrument refers.

the prejudice of a third person, with the exceptions mentioned in article 389.

The provisions of this article shall at no time apply to an instrument recorded in accordance with the provisions of article 390, unless prescription has validated and assured the interest to which said instrument refers.

(See I Gómez de la Serna, *Ley Hipotecaria* p. 619–21, ed. by Imprenta de la Revista de Legislación a cargo de Julián Morales, 1862; *Legislación Hipotecaria para Cuba, Puerto Rico y Filipinas* (2d ed. by Centro Editorial de Góngora, 1912).

| *Spanish Act of 1869* | *Puerto Rican Act of 1893* |
|---|---|
| Art. 34. Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons, once they have been recorded, even though the interest of such party should sub- | Identical with above article under this column. |

sequently be annulled or terminated by virtue of a prior deed not recorded or for reasons which do not clearly appear from said registry, *or if the record shall have been notified or communicated to those persons who during the past twenty years shall have possessed, according to the said registry, the same properties and shall not have made claim thereto within a period of thirty days.*

*The notice referred to in the preceding paragraph shall be given at the request of whoever, according to the registry, is the owner of the real property or real right, by the registrar himself, verbally or in writing, to the previous acquirers whose right appears of record and who reside within the jurisdiction of the registry, and by edicts to those who are absent or are unknown, and to the heirs of the deceaseds.*

*The persons so notified by any of those means who,*

*within a period of thirty days, fail to present in the corresponding court a claim which may invalidate the record thus notified, may not assert their right, if any, against a third party who may thereafter duly record his title in the same property, even though the former record derives from a fraudulent or void title.*

*The personal notice shall be served by leaving with the person so notified an abstract of that part of the record in which he may be interested and requesting a receipt therefor, or, if this is not possible, the registrar shall issue a return of service. If the person notified shall answer verbally that he has no claim to make, or shall let the thirty-day period elapse without presenting to the registry some document evidencing the presentation of his claim, the registrar shall also set forth this fact by means of a return. When the person so notified shall answer in writing, such writing shall be signed by him and kept by the registrar in his files.*

*Edicts, whenever used, shall be published and posted on the usual sites of the place where the property is located and of the town within the registry, and in the official bulletin of the province.*

*If within the thirty days allowed no claim shall be filed which may invalidate the record, eight days later the registrar shall make a marginal note on such record indicating the result. Such note shall not be made in any other case until the previous acquirer who shall have made claim against the record shall have been defeated at trial.*

*The provisions of this article shall not apply to the record of mere possession, unless the prescription has validated and secured the recorded title.*

(See 5 Alcubilla, *Diccionario de Administración* 658, ed. by López Camacho, 1877).

| *Spanish Act of 1877* | *Puerto Rican Act of 1893* |
|---|---|
| Art. 34. Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into | Identical with above article quoted under this column. |

by a person who, according to the registry, **has a right** to do so, once recorded, shall not be invalidated *as to those who may have contracted w i t h the former by onerous title,* even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed not recorded or for reasons which do not clearly appear from s a i d registry. *Nor shall such instruments or contracts be invalidated as to such persons, although the interest of such party should be subsequently annulled or terminated by virtue of a prior recorded deed, if the record in his favor shall have been notified to those who in the preceding twenty years shall have possessed, according to the registry, the same properties and shall not have made claim against it within a period of thirty days.*

.The notice referred to in the preceding paragraph shall be given at the request of whoever, according to the registry, is the owner of the real property or real right, by the registrar himself, verbally or in writing, to the previous acquirers whose right appears of record and who reside within the jurisdiction of the registry, and by edicts to those who are absent or are not known, and to the heirs of the deceaseds.

The persons so notified by any of these means who, within a period of thirty days, fail to present in the corresponding court a claim which may invalidate the record thus notified, may not assert their right, if any, against a third party who may thereafter duly record his title in the same property, even though the former record derives from a fraudulent or void title.

(See II Galindo y Escosura, *Comentarios a la Legislación Hipotecaria de España* 358–60, 4th ed. reprinted in 1903).

84

Art. 34. Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, once recorded, *shall not be invalidated with regard to those persons who shall have contracted with such person by onerous title, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded, or for reasons which do not clearly appear from the registry.*

Identical with above article quoted under this column.

Nor shall such instruments or contracts be invalidated as to such persons, even though the interest of such party should be subsequently annulled or terminated by virtue of a recorded prior deed, if the record in his favor shall have been notified to those who in the preceding twenty years shall have possessed, according

to the registry, the same properties and shall not have made claim against it within a period of thirty days.

The notice referred to in the preceding paragraph shall be given at the request of whoever, according to the registry, is the owner of the real property or the real right, by the registrar himself, verbally or in writing, to the previous acquirers whose right appears of record and who reside within the jurisdiction of the registry, and by edicts to those who are absent or are unknown, and to the heirs of the deceaseds.

The persons so notified by any of these means who, within a period of thirty days, fail to present in the corresponding court a claim which may invalidate the record thus notified, may not assert their right, if any, against a third party who may thereafter duly record his title in the same property, even though the former record derives from a fraudulent or void title.

The personal notice shall be served by leaving with

the person so notified an abstract of that part of the record in which he may be interested **and requesting** a receipt therefor, or, if this is not possible, the registrar shall issue a return of service. If the person so notified shall answer verbally that he has no claim to make, or shall let the thirty-day period elapse without presenting to the registry some document evidencing the presentation of his claim, the registrar shall also set forth this act by means of a return. When the person required so to do shall answer in writing, such writing shall be signed by him and kept by the registrar in his files.

Edicts, whenever used, shall be published and posted on the usual sites of the place where the property is located and of the town within the registry, and in the official bulletin of the province.

If within the thirty days allowed no claim shall be filed which may invalidate the record, eight days later the registrar shall make a

marginal note on such record indicating the result. Such note shall not be made in any other case until the previous acquirer who shall have made claim against the record shall have been defeated at trial.

The provisions of this article shall not apply to the record of mere possession, unless the prescription has validated and secured the recorded title.

*Upon expiration of the fifteen-year period counted as of the date thereof, the records of property purchased from the State, whether prior or subsequent to this Act, may not be annulled by reason of excess of area or other causes which do not appear from the registry.*

(See 2 Morell, *Legislación Hipotecaria* 668–70, 2d ed. revised and enlarged by Editorial Reus, S. A., 1927).

| *Spanish Act of 1944–45* | *Puerto Rican Act of 1893* |
|---|---|
| Art. 34. A third person who acquires in good faith, by onerous title, any right from a person who according to the registry has power to transmit the same, shall continue to hold | Identical with above article quoted under this column. |

> such title once it is re-
> corded, even though the
> title of the grantor is
> thereafter annulled or
> terminated for causes
> which do not appear
> from the registry.
>
> The good faith of a third person is always presumed, unless it is shown that he was aware of the inaccuracy of the registry.

(See Medina y Marañón, *Leyes Civiles de España*, pp. 37–41, covering the mortgage text, ed. by Instituto Editorial Reus, 1949).

Having examined all the changes undergone by § 34 of the Spanish Mortgage Law, we see how the original principle of 1861, "that which is recorded is not invalidated by that which is not recorded" —Gómez de la Serna, *op. cit.* at 622—is gradually transformed legislatively, in favor of an absolute registral faith, but surrounded by a series of requirements which are actually a system of guaranties for all interests involved. In order to validate that which has been subsequently recorded as against that which was previously recorded, the amendment of 1869 requires that notice be given to all persons who during the past twenty years shall have held the possession, according to the Registry. The reform of 1877 substitutes the concept "acquirer by onerous title" for that of "third person," and limits the effects of the record and notice as to acquirers without good consideration, grantees, heirs, etc. The reform of 1909 merely refers to the record of properties purchased from the State, which could not be annulled after the expiration of the fifteen-year period by reason of excess area or for other causes. The amendment of 1944–45 again restores

the concept of third person, but only a third person in good faith; preserves the limitation as to the acquirers without good consideration; restores the validation of the record by the system of notices; and declares that the acquisition shall stand against causes of nullity which do not appear from the Registry itself. We regret not to have time to elaborate on the concepts of "registral inaccuracy" and "third person in good faith" used in the latest Spanish amendment.

As to the actions of nullity, which is now our concern, it is clear that, according to the Spanish law of 1861, a later record could be annulled to the prejudice of a third party, provided (1) that the title on which the action of nullity was based had been previously recorded, or (2) that the cause of nullity clearly appeared from the Registry. As rightly stated by Roca Sastre, *op. cit.* at 436, both things were the same "with no other change than the addition of *causes of nullity* (or resolution) to the concept of un-recorded *titles*. Therefore, § 34 of the Mortgage Law of 1861 was but a mere application of the basic rule that *that which is not recorded does not prejudice a third party*, no matter how strictly this rule is interpreted (5)–(5) in other words, that the record of a valid title was sufficient for the nullity of a title subsequently recorded to affect a third acquirer, *despite the fact that such nullity did not clearly appear from the Registry.*"

An examination of our § 34, in the light of its true historical precedents and its present legislative scope, as it is always our duty to do so, shows that the only protection provided by § 34 of our law to a subsequent acquirer is the one contained in the classical maxim of Gómez de la Serna, "that which is recorded is not invalidated by that which is not recorded." Gómez de la Serna, *op. cit.* at 622. This element of registral compulsiveness gains emphasis if we bear in mind that the purpose of the Puerto Rican Mortgage Law of 1893 was to compel the registration of titles to secure more strongly the territorial credit.

Based on this rule—that which is not recorded does not prejudice and that which is previously recorded prejudices that which is subsequently recorded—the Legislature of Puerto Rico has not deemed it advisable, as did the Spanish reform of 1869, to adopt the procedure by virtue of which a void title is convalidated by means of service, or to establish any distinction as to nullity between acquirers by an onerous title and acquirers without good consideration, as was done by the Spanish reform of 1877, or to declare the validation of a recorded null title as against a previously recorded title as to a third person, as was done by the Spanish reform of 1944–45, or to provide compensation by the State to the prejudiced previous owner suggested for the most recent Spanish reform. The Legislature of Puerto Rico, on the contrary, has deemed it advisable to maintain the balance between the civil sphere of nullity and the registral sphere of nullity, it has liberalized the registration with curable defects which, to a certain extent, is an authorization of the registral inaccuracy.

Thus, the present state of the Puerto Rican law is the same one which prevailed in Spain in 1861, which provides, as Roca Sastre says at pp. 439 and 430 of his work *supra*, "that under the Mortgage Law of 1861, a third party who acquired a title from the record owner by virtue of a null conveyance, even if the third party acquired title in good faith and by onerous title and recorded its acquisition, forfeited the latter as a result of the successful filing of an action for nullity based on a former recorded title, *regardless of whether this invalidating possibility was not shown or revealed in any manner whatever by the Registry*. To better understand the scope of the commentaries, we shall copy from some of the previous pages of the same work the following analysis of the mortgage legislation of 1861: "Taking the more positive view that the recorded titles were effective against or *as to third parties*, the law-makers of 1861 deemed it necessary to determine that these effects were not produced

if the recorded title was void, and for that reason they included § 33 in the Mortgage Law, the contents of which were almost identical with those of § 33 of the present law. Section 34 of the Mortgage Law of 1861 gave the impression of being an exception to § 33 *supra*, for its first words being 'notwithstanding the provisions of the foregoing article,' it seemed intent in protecting at any cost a third party who acquired from the record owner, even though the latter had become such owner by virtue of a null conveyance; but in fact it was not so, at least normally, that is, when there were two records of conveyances made prior to the registration of such null title, so that if the record owner, according to the preceding record, requested successfully in court that such title and its registration be declared void, such nullity *carried with it* the acquisition of the third party, no matter whether he had acquired by onerous title and in good faith, according to the provisions of the second paragraph of said § 34. . . . This provision protected only a third acquirer whenever the title of his transferor was annulled by virtue of a *previous title not recorded or for causes which did not clearly appear from the Registry*, but this protection was ultimately the same as the one obtained by applying § 32 (then § 23), with no other change than the addition of *causes* of nullity (or resolution) to the concept of unrecorded *titles*. Therefore, § 34 of the Mortgage Law of 1861 was a mere application of the basic rule that *that which is not recorded does not prejudice a third party*, no matter how strictly this rule is interpreted."

That this was the reasoned and prevailing interpretation of § 34 of the Mortgage Law of 1861, according to Roca Sastre, "is evidenced by the fact that the mortgage reform of 1869 did not modify this precept for the purpose of clarifying it, but altered it substantially by introducing the important and original measure of service." (Footnote 2, p. 436.)

Reviewing the commentaries of Gómez de la Serna concerning the Act of 1861, Roca Sastre further says (footnotes 4 and 5, pp. 436, 437): "In providing that only by virtue of a recorded instrument may another instrument, also recorded, be invalidated to the prejudice of a third party, the second paragraph of § 34 implicitly recognizes that a previously recorded title is not invalidated by a subsequently recorded title which is not legitimate for this purpose. As to those whose title is recorded, the common law determines the respective value of their titles. Where a person who learns from the Registry of the existence of previous titles fails to inquire into the legitimacy of the acquisitions of others and his own, he has but himself to blame; the law protects against that which can not be learned, but not against that which through negligence he fails to investigate when he has the means to do so. Everything is part of the same thought, which may be formulated in the following terms: *what does not appear from the Registry can not prejudice a third party.* . . . In other words, that the record of a valid title was sufficient for the nullity of a title subsequently recorded to affect a third acquirer, *despite the fact that such nullity did not clearly appear from the Registry.* That is to say, that the lawmakers of 1861 had an overly limited idea of the registral publicity, for if such publicity provides that nothing which does not *appear* from the Registry shall not prejudice a third party acquiring in good faith and by onerous title, it is evident that in the case of a recorded null title the element to be published or notified to third parties is not the *title* element, but the fact of its *nullity*."

There is no question that in the instant case there was a previous title recorded in the name of Dr. Eladio Izquierdo Serrano. In the complaint of this case it is alleged that the tax sales are wholly void "because in the prosecution of the corresponding distraint proceeding the Treasurer of Puerto Rico failed to comply with the provisions of § § 315,

348, 349, 350, 351, and 352 of the Political Code, since in none of the auctions carried out notice was given to the heirs of Eladio Izquierdo Serrano, who at the time of the sale were José A. Izquierdo Rivera and Alfredo Izquierdo Negrón; and that since the latter assigned his share to Manuela Quintero Izquierdo and Manuel Godínez Caloca, the latter were not notified of the distraint proceeding or of the public sale in order to give them an opportunity to redeem the property, despite the fact that the Treasurer of Puerto Rico knew who the heirs and assigns of Eladio Izquierdo Serrano were at the time the distraint proceeding commenced, which led to the auction of the properties and the adjudication of each and every one of them to Josefa Godínez." (Pp. 10 and 11 of the complaint.) There is no question that the lack of service, once it is established, renders null and void the adjudication made at public auction according to our own case law. There is no question that we are concerned with a cause for nullity which appears from the Registry itself, since the adjudications in the tax sales are recorded at length setting forth in detail the entire proceeding.

This being so, the annulment of the awards at public auction causes the nullity of all successive transfers. *González* v. *Heirs of Díaz*, 69 P.R.R. 598 (Todd, Jr., 1949); *González et al.* v. *Pirazzi et al.*, 23 P.R.R. 370 (Wolf, 1916).

In my opinion, the case of *Pérez* v. *Cancel, supra,* at 633–34, (Marrero, 1954), does not reflect the present state of our legislation and ought to be revised, since it is based on foreign legislative principles and not on a new interpretation of the purely theoretical aspect of the issue. I therefore feel constrained to dissent in this case because the holding that The Lutheran Church is a third party is based on the principles announced in *Pérez* v. *Cancel.*